COURT OF APPEALS OF VIRGINIA


Present:    Judges Annunziata, Bumgardner and Frank
Argued by teleconference


NORFOLK DIVISION OF SOCIAL SERVICES

v.      Record No. 0931-03-1

SIMONIA HARDY
                                                        OPINION BY
LAKIRA SHAMEKA HARDY AND            JUDGE ROSEMARIE ANNUNZIATA
LARISSA SHANTA HARDY, BY                    MARCH 2, 2004
 THEIR GUARDIAN *AD LITEM*

v.      Record No. 0973-03-1

SIMONIA HARDY


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Leafe, Judge

Martha G. Rollins, Deputy City Attorney (Bernard A. Pishko,
City Attorney, on briefs), for Norfolk Division of Social Services.

Ayodele M. Ama, Guardian *ad litem* (Ama & Simpson, on briefs),
for Lakira Shameka and Larissa Shanta Hardy.

Adrianne L. Bennett (Berry, Ermlich, Lomax & Bennett, on briefs),
for Simonia Hardy.


These appeals arise from the denial of petitions filed by the Norfolk Division of Social

Services (the Division) for (1) permanency planning with the goal of adoption and (2) the

termination of parental rights on behalf of two minor female children, Lakira and Larissa.

Simonia Hardy (mother) challenged the petitions because she believed the children's best

interests would not be served by making the children available for adoption; adoption would

remove the children from their placement with a foster parent, with whom the children had

developed an emotional attachment. For the reasons that follow, we affirm the decision of the trial court.

## I. Procedural Background

The minor children who are the subjects of this appeal were eight and ten at the time of the circuit court hearing. Initially, they and their two older brothers, A. and M., came into the care of the Division in 1994 at the request of their mother because she was homeless at the time. They were returned to mother's custody when her personal circumstances stabilized. However, in September 1995, they were again removed as a result of the mother's abusive disciplinary methods and her inability to provide adequate shelter for the family. The children were then placed in foster care with Shirley Blount. After mother received extensive services, including job readiness assistance, parenting classes, referrals for housing, and therapy for the children with Dr. Lawrence Ross, a psychologist, her circumstances improved sufficiently to permit the return of Lakira and Larissa to her custody in August 1999. However, A. and M. did not return; M. was placed in another foster home with a goal of independent living, and A. did not wish to return to his mother's custody because he did not care for her "lifestyle." A. therefore remained with Blount. Thereafter, the Division continued to provide services to the family.

On October 5, 2000, Lakira and Larissa were again removed from mother's custody, on grounds of abuse and neglect, and placed in foster care with another foster care provider. However, Lakira and Larissa soon returned to the care of Blount because they began experiencing severe behavioral problems.

In the course of their stay in foster care, the Division filed several foster care plans, including its plan with the goal of adoption, which was approved by the Norfolk Juvenile and Domestic Relations District Court on February 2, 2001. The Division subsequently filed a petition for permanency planning with adoption as the goal and a related petition for the

termination of parental rights. The juvenile and domestic relations district court denied both petitions. The Division and the guardian *ad litem* for the children appealed the decisions to the circuit court. The circuit court granted the petition with respect to the children's father,[1] but denied it as to mother. The Division and the children's guardian *ad litem* appeal the court's denial of the petition to terminate mother's parental rights.

## II. Factual Background

The circuit court held an evidentiary hearing on May 23, 2002 and May 28, 2002 to determine the merits of the Division's appeal from the juvenile and domestic relations district court. At that hearing, the court heard evidence that established mother was unable to properly care for her children. Mother testified that she did not have a stable residence. Mother also stated that, although she had held a steady job at a fast food restaurant for several months, she was still living in a "group home" to save money. She further admitted that she had not continued counseling as recommended by the Division. In addition, she spent forty-five days in jail in the summer of 2001 because she had violated a court-imposed condition that she complete an anger management program, a condition which had been imposed as part of the sentence she received after being convicted for assault and battery of a police officer. In closing argument, mother's attorney admitted that mother was not ready to have the children returned to her.

Other evidence in the case established that the children were doing well under the care of their foster mother, Shirley Blount. The children had known Blount since 1995 when they were first removed from mother's custody. Dr. Brian K. Wald, a clinical psychologist who evaluated Lakira and Larissa, testified that the girls told him they did not want to return to their mother's custody because they considered Blount a "surrogate mother." He confirmed that they were

---

[1] Father was incarcerated for second-degree murder at the time of the circuit court's hearing. His expected release date is 2019. The termination of his parental rights is not an issue in this appeal.

doing well in her care. Joyce Bennett, a social worker for the Division, testified that the children had a strong emotional bond with Blount and with their brother, A., who also resided in the Blount home. Gale Pigram, a social worker for the Division, confirmed that A. and Lakira and Larissa were "very close" and that A. was "very involved" with his younger sisters. According to Bennett, all the children called Blount "grandmother" or "grandmama." Bennett also testified that adoption would be difficult for Lakira and Larissa because they were "used to" Blount's foster home and because A. could not follow them to a new adoptive home. Pigram said that when she talked about adoption with Lakira and Larissa, they appeared "sad and withdrawn." Blount said that Lakira and Larissa told her that they did not want to be adopted unless Blount could "go with them."

Blount testified that Lakira and Larissa were "doing beautiful" under her care and that, because the children had been with her so long, Blount and her husband were "just like mom and dad to them." Blount related that Lakira and Larissa exhibited behavioral problems in the short time they were with another foster care provider because "they really wanted to come back . . . . [T]hey had been with me five years prior to that, and I was really the only mother or grandmother that they really knew anything about." Due to the behavioral problems exhibited by the girls when they were in the care of the other foster parent, Blount opined that Lakira and Larissa would not do well in an adoptive placement. Mother confirmed that her children "love Ms. Blount to death" and that she is "grandma to them." Lakira and Larissa "would be devastated," according to mother, if they were taken from Blount's care. Accordingly, mother's attorney argued that it would not be in the children's best interests to terminate parental rights because the children would be removed from Blount's home.[2]

---

[2] Blount testified that she could not adopt Lakira and Larissa because her husband was ill and she was uncertain how much care she would have to provide him in the future.

Based on this evidentiary hearing, the circuit court entered an order on March 10, 2003, granting the petition to terminate the father's parental rights but denying the petition seeking termination of the mother's parental rights. It did not address the Division's petition seeking adoption for the children. In an opinion letter to counsel, the court stated:

> The evidence established a number of deficiencies in Mrs. Hardy's parenting as well as Social Services desire for the stability of a permanent home for the girls through adoption. The evidence also established that [the girls] are currently in a stable foster home with Ms. Shirley Blount with whom they have resided for a substantial portion of their lives. Their older brother [A.] with whom the girls appear to have a strong bond, also is in foster care with Mrs. Blount. It is significant to the Court that Mrs. Blount testified to regular personal and telephone contact between the girls and their mother and that both girls look forward to this contact.
> [The girls] are currently in a positive, stable environment with a supportive older brother and regular contact with their natural mother. In the Court's opinion, maintaining this current support system is in the girls [sic] best interests.
> While [mother] has substantial deficiencies to overcome, the Court is not prepared to terminate her residual parental rights at this time.

The Division and the children's guardian *ad litem* appeal the decision, claiming that the trial court's decision was plainly wrong. For the following reasons, we affirm.

### III. Analysis

On review of a trial court's decision regarding the termination of parental rights, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). The trial court is vested with "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 325, 387 S.E.2d at 795. Accordingly, the trial court's decision will not be disturbed on appeal unless it committed an abuse of discretion, id., or unless its

decision was plainly wrong or without evidence to support it.  Peple v. Peple, 5 Va. App. 414,

422, 364 S.E.2d 232, 237 (1988).

The law governing termination of parental rights is found in Code § l6.1-283(B) and (C).

Because both subsection (B) and (C) contain substantially the same requirements, a petition for

termination may be based on either one or both.  See Ferguson v. Stafford County Dep't of Soc.

Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992) (upholding termination under both

subsections); see also Richmond Dep't of Soc. Servs. v. L.P., 35 Va. App. 573, 583, 546 S.E.2d

749, 754 (2001) (noting that both subsections "clearly relate to the same subject matter, have the

same basic objectives, are framed under a single system, and, thus, are 'governed by one spirit

and policy'" (quoting Stanley v. Tomlin, 143 Va. 187, 195, 129 S.E. 379, 382 (1925))).  In fact,

the Division relies on both Code subsections in this appeal.[3]

Code § 16.1-283(B) provides, in pertinent part, that parental rights of the parent of a child

placed into foster care for abuse or neglect may be terminated if, by clear and convincing

evidence, the court finds it is in the *best interests of the child* and that abuse or neglect presents a

> serious threat and substantial threat to his life, health or
> development*; and*
>
> 2.  It is not reasonably likely that the conditions which resulted in
> such neglect or abuse can be substantially corrected or eliminated
> so as to allow the child's safe return to his parent or parents within
> a reasonable period of time.

Code § 16.1-283(C) provides, in relevant part:

> The residual parental rights of a parent . . . of a child placed in
> foster care . . . may be terminated if the court finds . . . that is in the
> *best interests of the child* and that:
>
> *            *            *            *            *            *            *

---

[3] Although the trial court terminated father's parental rights pursuant to Code
§ 16.1-283(B), the record does not disclose which code section it relied upon in denying the
Division's petition to terminate mother's parental rights.

>   2. The parent or parents, without good cause, have been unwilling
>   or unable within a reasonable period of time not to exceed twelve
>   months from the date the child was placed in foster care to remedy
>   substantially the conditions which led to or required continuation
>   of the child's foster care placement . . . .

(Emphasis added).  Both sections further provide that proof that the parent has failed to follow through with the appropriate and reasonable rehabilitative efforts of social, medical or mental health agencies, which efforts are aimed at reducing or eliminating the abuse or neglect of the child in question, shall be *prima facie* evidence that the conditions leading to the foster care placement have not been remedied.  Code § 16.1-283(B), (C).

Thus, before terminating parental rights under Code § 16.1-283(B), a court must determine whether the evidence establishes:  (1) that termination is in the best interests of the children; (2) that the neglect or abuse suffered by the child presents a serious threat to the child's health or well-being; and (3) that the conditions which resulted in the abuse or neglect cannot be corrected within a reasonable period of time.  Under Code § 16.1-283(C), a court must determine whether the evidence establishes:  (1) that termination is in the best interests of the children, and (2) that the conditions which resulted in the foster care placement have not been remedied within twelve months.  Under both subsections, a finding that termination is in the best interests of the children is a threshold determination.

We acknowledge that the evidence in this case supports the Division's petition for termination, in part.  The evidence showed that mother did not follow through with the recommendations of the Division to continue counseling.  It further showed that the conditions which resulted in the removal of Lakira and Larissa were not remedied either within a reasonable time, see Code § 16.1-283(B), or within twelve months, see Code § 16.1-283(C).  At the time of the hearing, mother still did not have stable housing, and she in fact conceded that she was not capable of caring for her children.

However, the evidence also established that termination of mother's parental rights was not in the children's best interests. Testimony from Dr. Wald, Bennett, Blount, and mother established that Lakira and Larissa were doing very well under the care of Blount. Mother opined that her children "would be devastated" if they were removed from Blount's care. The court also heard testimony that Lakira and Larissa would not likely fare well in an adoptive placement because they had a strong bond with their brother, A., and with Blount, whom they treated as their grandmother. Pigram testified that the children became "sad and withdrawn" when she discussed adoption with them, and Blount testified that Lakira and Larissa did not want to be adopted unless she could "go with them." Indeed, during the short time Lakira and Larissa were under the care of another foster mother, they experienced severe behavioral problems that were remedied only upon their return to Blount. Based on this evidence, the trial court determined that termination of mother's parental rights was not in the children's best interests. We cannot say that the trial court abused its discretion in reaching this conclusion because the evidence fully supports its determination.

The Division argues, however, that the trial court's decision results in a *de facto* permanent foster care placement and that, under the law, the court cannot consider permanent foster care before it terminates parental rights and determines that adoption is not feasible. Although there is some support for this position in the statutes governing permanency planning for children, see, e.g., Code § 16.1-282.1(A) (placing permanent foster care as a goal behind transferring the child to a relative and behind termination of parental rights); Code § 63.2-908 (stating that a "court shall not order that a child be placed in permanent foster care unless it finds that . . . diligent efforts have been made by the local department to place the child for adoption and such efforts have been unsuccessful"), and in our case law, see, e.g., Stanley v. Fairfax County Dep't of Soc. Servs., 10 Va. App. 596, 605-06, 395 S.E.2d 199, 204 (1990) (holding that

"[p]ursuant to Code §§ 63.1-206.1(A) [now Code § 63.2-908] and 16.1-281(B), the court can only consider permanent foster care after it has determined that adoption, upon termination of residual parental rights, is not an alternative in a given case"), we find that the trial court did not err on this ground for two reasons.

First, the court did not, and could not, order permanent foster care. The Division never presented the court with a petition for permanent foster care; it only presented the court with a petition for termination of mother's parental rights to be followed by adoption. See Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 23, 348 S.E.2d 13, 17 (1986) (noting that "[a] petition for termination of parental rights pursuant to Code § 16.1-283 does not encompass a petition for permanent foster care. The latter is not a less drastic form of the former, but rather is a different and distinct alternative."). The court thus had only two alternatives—it could either grant the petition seeking termination, or it could deny the petition. Finding that termination would not be in the children's best interests, the court properly denied the petition. Second, the best interests of the child is the court's paramount concern and therefore properly governed the ultimate resolution of the issue. See, e.g., Keel v. Keel, 225 Va. 606, 612, 303 S.E.2d 917, 921 (1983); Parish v. Spaulding, 26 Va. App. 566, 572, 496 S.E.2d 91, 94 (1998), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999). Here, the trial court's determination that the best interests of the children would be served by not terminating mother's parental rights, and by allowing them to stay in the stable environment supplied by Blount, is supported by the evidence. Accordingly, under our standard of review, we must affirm the decision of the trial court.

Affirmed.