COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Overton


NEWPORT NEWS DEPARTMENT
 OF SOCIAL SERVICES

                                                                MEMORANDUM OPINION*
v.        Record No. 1230-04-1                                        PER CURIAM
                                                                    OCTOBER 26, 2004
THOMAS COOPER



            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                              David F. Pugh, Judge

            (Pamela P. Bates, Assistant City Attorney, on brief), for appellant.

            No brief for appellee.

            No brief for Guardian *ad litem* for the minor children.


        This matter arises out of petitions filed by the Newport News Department of Social Services

to terminate Thomas Cooper's parental rights in his four minor daughters.  The Department

contends the trial court erred when it granted father's motion to strike the evidence and dismissed

the petitions to terminate his parental rights.  Upon reviewing the record and DSS's brief, we

conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of the

trial court.  See Rule 5A:27.

                                            Background

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  On January 2, 2001, the

Department removed the father's four daughters from his home upon a complaint of neglect and

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

abuse. The mother of the children is deceased. The conditions which led to the removal of the children included housekeeping problems, the poor hygiene of the daughters, and the failure to obtain adequate dental and medical care for the children. Prior to the removal of the children, the Department had provided the family with numerous services, including assistance with house cleaning, medical and dental care, and food stamps.

The Department filed foster care service plans for the children with the goal of returning the girls to father's home. The plans required father to complete psychological, psychiatric and psychosexual examinations, and to secure and maintain housing and maintain employment. The Department also recommended that father enter into individual, anger management, and family counseling.

Kimberly Chaney, a former foster care social worker, testified father completed "[e]verything except the individual therapy." Chaney testified father rented a three-bedroom apartment, took psychological, psychiatric and psychosexual evaluations, and completed anger management and parenting classes. She also testified that father had successful supervised visitation with three of the children for about four months. He then had unsupervised visitation for a period of time until the Department became concerned about the behavior of the children after the visits and terminated all visitation.

Selena Marrow-Smith, a foster care worker who later monitored the family, testified that, in February 2003, she visited father in his three-bedroom apartment, which she stated was an "appropriate" place for the children to reside. Father was employed with a security firm, and he continued to work with that firm at of the time of the hearing. During Marrow-Smith's visit, father told her that he intended to re-marry and would then have increased income. He also expressed a desire for the children to return to his care.

Marrow-Smith testified that in April 2003, the Department filed new foster care service plans for the children, changing the goals to adoption based in part on an expressed desire of the children not to return to their father's care. She also testified that the Department was concerned that father had not participated in individual or family therapy. She acknowledged, however, that father had improved his housing situation, housekeeping issues, and his income.

Julia Canestrari, a licensed clinical therapist, met with some of the daughters and met with father in February 2002. She testified that father could not articulate why the children were removed from his custody, except that he knew the family's residence was not clean. Father also told her he was overwhelmed by the loss of the children's mother and he was having difficulty meeting the day-to-day needs of the children.

Richard Tumblin, a licensed clinical social worker, testified as an expert on parenting evaluations. In November and December 2002, he conducted a parenting evaluation on father, he had two individual sessions with father, and he also had two parent-child sessions with the family. Tumblin noted that father informed him he had taken parenting classes and had found them helpful. Tumblin also testified that father was cooperative and verbal during the sessions and that father acknowledged he had made mistakes. Tumblin, whose last contact with father was in December 2002, recommended that father obtain ongoing individual counseling for six months to one year and that he have only supervised visitation with the children. Tumblin did not recommend that father's parental rights be terminated.

On December 17, 2002 and January 15, 2003, Dr. Julia Hislop, a psychologist, conducted a parenting-capacity evaluation on father. She testified that father's "prognosis is guarded due to lack of consistent participation in treatment." She recommended individual therapy to address "social concerns, his history of aggression and abuse and his coping resources." Dr. Hislop testified that father has "quite [a] significant" need for individual therapy in order to address his

coping resources, reduce aggression, and improve his ability to form close relationships. She also suggested that father not have unsupervised visitation with the children and that visitation decisions be made in collaboration with the children's therapists.

The trial court granted father's motion to strike the evidence. The trial court ruled that the Department did not show that father did not substantially comply with the requirements of Code § 16.1-283(C)(2), and it denied the petitions to terminate father's parental rights in the children.

<u>Analysis</u>

Recognizing that "[t]he termination of residual parental rights is a grave, drastic and irreversible action," <u>Helen W. v. Fairfax County Dep't of Human Devel.</u>, 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), we, nevertheless, presume the "'trial court . . . thoroughly weighed all the evidence [and] considered the statutory requirements.'" <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting <u>Farley v. Farley</u>, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).

Code § 16.1-283(C)(2) provides, in pertinent part, that a court may terminate the residual parental rights of a parent of a child in foster care upon clear and convincing evidence that it is in the best interest of the child and that the following exists:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior

efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

The trial court found that the Department did not show that father had not substantially remedied "the situation." Specifically, the court found that the Department failed to show "at what point" father was required to go to individual counseling and that the Department did not prove father's attendance at counseling "was a condition that required [the children] to remain in foster care."

The evidence also showed that father remedied many of the conditions which resulted in the removal of the children such as finding appropriate housing, maintaining employment, and increasing his income. In addition, Tumblin and Dr. Hislop recommended that father have continued supervised visitation with the children.

In view of the trial court's findings and the evidence supporting those findings, we hold that the trial court's decision not to terminate father's parental rights is supported by the evidence. See Norfolk Div. of Soc. Servs. v. Hardy, 42 Va. App. 546, 554-55, 593 S.E.2d 528, 532-33 (2004) (although parent did not follow through with continued recommended counseling and did not substantially remedy conditions leading to foster care placement, evidence supported trial court's decision not to terminate parental rights). For these reasons, we affirm the decision of the trial court.

Affirmed.