UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Ortiz, Friedman and White
Argued by videoconference


VAYLENE MICHELLE ARNETT
                                                    MEMORANDUM OPINION[*] BY
v.          Record No. 1035-23-3                     JUDGE DANIEL E. ORTIZ
                                                          APRIL 2, 2024
HENRY-MARTINSVILLE DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF HENRY COUNTY
Marcus A. Brinks, Judge

Kimble Reynolds, Jr. (Kimble Reynolds & Associates, on brief), for
appellant.

Jeremy E. Carroll; Jason S. Eisner, Guardian ad litem for the minor
child (Brian H. Richardson; George A.H. Lyle, County Attorney;
Spilman Thomas & Battle, PLLC, on brief), for appellee.


Vaylene Michelle Arnett ("mother") appeals the circuit court's order terminating her

parental rights under Code § 16.1-283(C)(2). Mother argues that the circuit court erred by finding

that (1) the termination was in the best interests of the child and (2) the Henry-Martinsville

Department of Social Services made reasonable and appropriate efforts to help her remedy the

conditions that led to or required the continuation of the child's placement in foster care. We find

no error and affirm the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). Though mother is the biological parent of the child who is the subject of this appeal, in October 2020 the child, then ten years old, lived with her legal guardian, not mother.[2] On October 15, 2020, the child's guardian petitioned to be relieved of the child's custody. In November 2020, the Henry County Juvenile and Domestic Relations District Court ("JDR court") awarded temporary custody of the child to mother and ordered the Department to provide close supervision once a week. The JDR court also ordered mother to cooperate with the Department's services and entered a preliminary child protective order.

The Department offered mother parenting classes and referred her to a parenting coach; however, mother used the parenting coach "to help her clean her home, drive her to and from places, and pick her up from work." As a result of mother using the parenting coach for transportation and housekeeping, she did not complete her parenting modules. The Department referred mother for intensive care coordination ("ICC"), but mother met with the worker only once. The Department also noted concerns about mother's housing situation, as she struggled to maintain a "clean" home. Mother allowed a man with a prior felony conviction for distribution of cocaine near a school to live in her home and called him her "nanny." The Department also referred mother to domestic violence services because of reported incidents with her then-boyfriend. Due to

---

[1] The record in this case was sealed. "[T]his appeal requires unsealing certain portions to resolve the issues raised by the parties." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022). We unseal only the facts mentioned in this opinion; the rest of the record remains sealed. *Id.*

[2] The child's father is deceased.

mother's "[p]oor choices and lack of progress in services," the JDR court entered a preliminary removal order on August 9, 2021, and ordered mother to cooperate with all recommended services and evaluations.[3]

When the child entered foster care, she had not been attending school regularly. Though she needed to be evaluated for an individual education plan, evaluators were unable to obtain a baseline because of her regular absences. The child had no physical health concerns but had been diagnosed with anxiety, borderline intellectual functioning, and attention deficit disorder, requiring medication.

After the child entered foster care, the Department established requirements that mother needed to complete before she could be reunited with the child. The Department referred mother for a psychological evaluation. Mother completed only the first of three necessary appointments for the psychological evaluation before the JDR court's permanency planning hearings.

The Department continued the parent coaching services and ICC and offered mother supervised weekly visitation, usually at public places to which mother could easily secure transportation. By December 2022, the Department reduced the frequency of the supervised visits to bi-weekly at its offices, following an "incident" during visitation at a local restaurant during which mother "shout[ed] obscenities" at the CASA worker and the child's foster mother. The restaurant indicated that mother was "no longer welcomed to have visitation there."

In addition, the Department required mother to obtain and maintain stable employment and housing that was "clean, hazard free, and suitable for children." The Department found mother's home "cluttered, in a state of construction and disrepair, . . . unsafe and unsanitary and . . . an imminent risk to the [child's] health and safety." To assist mother with keeping a clean house, the Department referred her for a life skills assessment. Between July and December

---

[3] The child's younger sibling initially entered foster care also, but later the Department placed him with his paternal grandparents; his placement is not before the Court in this appeal.

2022, mother moved at least three times and was unable to secure suitable housing for the child. The Department visited mother's home in Martinsville in May 2022 and discovered that it was undergoing renovations and had "safety hazards" as a result. Mother subsequently moved to Danville, but then returned to Martinsville. Mother held various jobs throughout 2022, but never provided proof of employment to the Department.

At the first permanency planning hearing, the JDR court found that mother had not completed the required services and ordered that the foster care goal change from relative placement/adoption to adoption. The Department subsequently petitioned to terminate mother's parental rights. At the second permanency planning hearing on January 4, 2023, the JDR court found that mother had made "very little progress," approved the foster care goal of adoption, and terminated mother's parental rights. Mother appealed the JDR court's rulings to the circuit court.

At the circuit court hearing, the Department presented evidence that "mother was repeatedly given notice of the need for housing and to complete services." Mother had completed the psychological evaluation by the time of the circuit court hearing but objected to its entry into evidence at the circuit court hearing, so the circuit court did not consider it when ruling. Acknowledging that mother did not have a car, the Department also noted that mother "routinely secured rides to visitation and work," but never requested assistance with transportation for services. The circuit court heard evidence that mother was living with her purported half-brother, whom she just met a few months before the hearing "when he saw her walking down the road and offered her a ride." The house that they lived in needed repairs. The child was reportedly "thriving" in her foster care home. After hearing the evidence and arguments, the circuit court terminated mother's parental rights under Code § 16.1-283(C)(2). Mother appeals.

ANALYSIS

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce*, 75 Va. App. at 699 (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Mother challenges the circuit court's termination of her parental rights. The circuit court terminated her parental rights under Code § 16.1-283(C)(2), which authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

Mother argues that the circuit court erred in finding that the Department had made reasonable and appropriate efforts to help her remedy the conditions that led to or required the continuation of the child's foster care placement. Mother contends that the Department identified

numerous services that she had to complete, but it "made no effort" to help her in meeting its requirements. For example, the Department did not help her with transportation to the required services.

"A parent's residual parental rights cannot be terminated '[i]n the absence of evidence indicating that "reasonable and appropriate efforts" were taken by social agencies to remedy the conditions leading to foster care . . . .'" *Joyce*, 75 Va. App. at 701 (alterations in original) (quoting *Weaver v. Roanoke Dep't of Hum. Res.*, 220 Va. 921, 928-29 (1980)). "'[R]easonable and appropriate' efforts of the Department can only be judged with reference to the circumstances of a particular case." *Id.* (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004)). The Department "is not required to force its services upon an unwilling or disinterested parent." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013).

The record reflects that the Department offered mother numerous services, including supervised visits and referrals for a psychological evaluation, parent coaching, and ICC. Although mother attended the supervised visits, she did not comply with the other requirements for reunification. Mother did not complete the psychological evaluation until after the JDR court had terminated her parental rights, which limited the Department's ability to provide her with additional services. Mother used the parent coaching services for transportation and housekeeping, instead of completing the parenting skills modules. Despite asking the parenting coach to drive her "to and from places," mother never asked for transportation assistance to attend the psychological evaluation appointments, though she now asserts that the transportation barrier prevented her from timely completing the final two appointments for the evaluation. Based on the record before us, the circuit court did not err in finding that the Department offered reasonable and appropriate services to mother.

Mother also argues that the circuit court erred in finding that the termination of her parental rights was in the best interests of the child, especially considering the "efforts and accomplishments" that mother made to meet the Department's requirements. Mother emphasizes that she regularly visited the child and sought housing in Martinsville and Danville.

The record reflects that mother moved several times while the child was in foster care. At no point did she obtain and maintain safe and stable housing. By the time of the circuit court hearing, mother was living with her purported half-brother in a home that "needed ceiling repairs in the room where the child would stay to be safe." Though mother testified that the home needed only "minor repairs," on appeal we must view the record in the light most favorable to the Department—crediting the testimony that the Department and the CASA worker deemed the living situation unsafe. *See Joyce*, 75 Va. App. at 695.

In addition to her lack of suitable housing, mother did not complete the Department's required services. At the time of the circuit court hearing, the child had been in foster care for almost two years, but mother was still not in a position to have custody of the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming h[er] responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison*, 42 Va. App. at 162). Considering the record before this Court, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*