COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Causey and Raphael
Argued at Lexington, Virginia


LACY HIGHSMITH
                                                    MEMORANDUM OPINION* BY
v.         Record No. 1534-23-3              JUDGE JUNIUS P. FULTON, III
                                                    JUNE 4, 2024
FRANKLIN COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
James J. Reynolds, Judge

Michael A. Nicholas (Daniel, Medley & Kirby, P.C., on brief), for
appellant.

No brief or argument for appellee.

(Patrick Thomas Nix, on brief), Guardian ad litem for the minor
children.  Guardian ad litem submitting on brief.


Lacy Highsmith ("father") appeals the circuit court's orders terminating his parental

rights under Code § 16.1-283(B) and (C)(2) and approving the foster care goal of adoption.  He

argues that the circuit court erred by finding that the evidence was sufficient to terminate his

parental rights and "not giving him another chance to build on the progress [he had] made to

address his alcoholism and the issues arising therefrom."  Finding no error, this Court affirms the

circuit court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). Father and Kristen Bowes ("mother") are the biological parents to A.H. and J.H., who are the subject of this appeal.[2]

On June 11, 2021, the Franklin County Department of Social Services ("DSS") became involved with the family when it discovered unsafe conditions in the home. At the time, A.H. was three years old and J.H. was one year old. The home was filled with garbage, infested with roaches, and hazardous items including sharp objects and marijuana were within the children's reach.[3] DSS administered drug screens to father and mother. Both parents tested positive for marijuana and cocaine. Father also tested positive for alcohol.

After a brief placement with a family friend, DSS assumed custody of the children on June 14, 2021. The Franklin County Juvenile and Domestic Relations District Court ("the JDR court") thereafter entered emergency removal orders, transferred custody to DSS, and placed the children

---

[1] Portions of the record in this case were sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Father is not the biological father to mother's eldest child, L.P., who was living with them at the time of the removal. Mother appealed the termination of her parental rights to L.P., A.H., and J.H, decided this same day. *See Bowes v. Franklin Cnty. Dep't of Soc. Servs.*, No. 0716-23-3 (Va. Ct. App. June 4, 2024).

[3] Both parents claimed that the home had belonged to mother's parents and was only a temporary living situation for them.

into foster care. The parties stipulated that a preponderance of the evidence established that the children were abused or neglected, or at risk of abuse or neglect.

After the children entered foster care, DSS established requirements that father had to complete before he could be reunited with A.H. and J.H. First, father needed to "demonstrate appropriate parental capacity." DSS also required father to submit to drug screens and participate in substance abuse treatment. Father's home had to be stable and "free from safety concerns and clutter." DSS referred father for parent coaching services and required him to participate in visitation and the children's medical appointments. DSS also referred father for individual counseling, family counseling, and medication management.

In addition, DSS referred father for an assessment with a domestic violence program, which he never attended. In September 2021, mother had obtained a two-year protective order against father, which she requested be dissolved two months later. In her supporting affidavit, mother alleged that father had assaulted her multiple times and had threatened to kill her if she left him. Mother stated in the affidavit that father "ha[d] busted out windshields of three different cars, even when [her] children were in the vehical [sic]."[4] Mother also claimed that two weeks earlier, father had dragged her out of bed by her ankles. Mother later sought to dissolve the protective order because father was "seeking counseling" and they wanted to work together in reuniting their family.

Despite the referrals for substance abuse treatment, father tested positive for amphetamines and methamphetamine in late 2021. He also tested positive for marijuana and alcohol, and the JDR court "cautioned" him not to use either. In January 2022, father was arrested for driving while

_____

[4] Father denied the allegations in mother's affidavit, except for breaking the windshield twice. He admitted that once, when they were arguing, father "tossed" his phone on the dashboard of the car, and it "busted the windshield." Another time, they were arguing outside the car, and father "slammed" his hands down, causing a "spider crack" in the windshield.

intoxicated (DWI), of which he was later convicted. In March 2022, father's drug screen was positive for marijuana.

Still, mother and father had made sufficient progress by April 2022 that DSS agreed to a trial home placement. Father had a job and new housing. About two months after the trial home placement began, DSS visited the home and gave drug screens to the parents. Mother tested positive for marijuana, and father tested positive for marijuana and alcohol. Mother stated that she continued to use marijuana because it helped her sleep. When father was informed that he needed to refrain from alcohol use, he retorted that "it was 'bullshit' he couldn't drink a beer after work." Mother told DSS that father had been "drinking heavily, every night," and was verbally abusive in the children's presence. She stated that he had made death threats against her and had a gun in the home.

DSS informed mother that she could not stay with father, and, on June 16, 2022, helped her move with the children to a hotel. Mother agreed that she and the children would have no further contact with father, and the trial placement continued just with mother. Due to a subsequent child protective services report against mother, which was later determined to be unfounded, and concerns about domestic violence and alcohol use, the trial placement ended in August 2022.

Because it was "at the end of the foster care time line to achieve permanency," DSS stopped working toward a goal of return home with father. DSS noted that father had tested positive for marijuana and alcohol, been "verbally aggressive" in the home, and had a history of domestic violence. After the change in the foster care goal, DSS limited its services to providing father with drug screens and hair follicle tests.

In September and December 2022, father again tested positive for marijuana. On September 8, 2022, the JDR court approved the foster care goal of adoption for the children. On December 21,

2022, the JDR court terminated father's parental rights to his children. Father appealed both rulings to the circuit court.

At the circuit court hearing, DSS presented evidence that A.H. had participated in occupational and speech therapy while in foster care. The guardian ad litem described J.H. as a "little ball of fire."

Mother stated that she and father had last reunited in September 2022, and had been together since then. While mother conceded that father's violence "scared" her, he was the "love of her life," and she was not prepared to end the relationship. She admitted that father's drinking "was very bad," but she stressed that he had since "quit drinking." When asked whether she reconciled with father because "it was easier and financially feasible," mother testified that she needed father and could not raise the children by herself.

Father testified that at the time of the circuit court hearing, he had been living in the same 3-bedroom home for almost 1 year and working at Rockingham Steel for almost 90 days.[5] Father did not have a driver's license because of the DWI conviction, so he relied on mother for transportation.

Father estimated that he had been smoking marijuana for 20 years and drinking alcohol for 15 years. He claimed to have used cocaine once as a "spontaneous thing." He added that he tested positive for methamphetamine when he smoked marijuana through the same device that others had used for methamphetamine.

Although he "graduated" from a drug treatment program and participated in individual counseling, father admittedly continued to drink alcohol and was found guilty of a DWI. His longest period of sobriety was three and a half months in 2021. Father confessed that during the trial home placement, he consumed alcohol "[m]ost of the time," but "not every night," and smoked

_____

[5] He previously had worked at Lowe's and then with a contractor.

marijuana after the children went to bed. He testified that after realizing in counseling that he had a "drinking problem," he started attending weekly Alcoholics Anonymous (AA) meetings on Zoom. At the time of the circuit court hearing, he had attended five AA meetings. Father testified that, instead of drinking, he worked "a lot to occupy [his] mind" and "[p]icked up a lot of hobbies." He also explained that through therapy, he was learning various communication skills and coping mechanisms to address his anger.

Father denied ever physically abusing mother but admitted to verbally abusing her in the past. Father explained that his alcoholism caused his anger and "inability to recognize that [his] kids were in a horrible situation." He also conceded that he had used alcohol and marijuana as recently as two or three weeks before the hearing. After confessing that he was "being stupid and immature" by not stopping the alcohol and marijuana use earlier, he further acknowledged that the children "shouldn't have waited this long" for him to "get [his] act together."

After hearing the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(B) and (C)(2). The circuit court pondered the issue of "how long do children have to wait in limbo wondering where they are going to be, who they are going to be raised by, [and] who is going to care for them." It stressed that remaining in the foster care system for a lengthy period was not in the children's best interests and father's delay in recognizing his drug and alcohol use did "not promote better parenting." This appeal follows.

ANALYSIS

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce*, 75 Va. App. at 699 (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on

- 6 -

appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Father argues that the circuit court erred by terminating his parental rights under Code § 16.1-283(B) and (C)(2) because he was making progress by addressing his substance abuse. Acknowledging that he had made "poor choices" in the past, father asserts that his most recent efforts to provide stability for the children were "substantial, significant, and sincere." Father contends that the termination of his parental rights was not in the children's best interests and the circuit court erred by not granting him "additional time" to demonstrate "concrete progress."

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

DSS removed the children because of the poor conditions of the family home and the substance abuse by father and mother. Before the children could return to father's care, DSS required him to demonstrate "appropriate parental capacity" and maintain a home that was "safe" and "free from substance abuse." To help father achieve those goals, DSS referred him to numerous services, including substance abuse treatment and individual counseling.

Although father had moved to a different home, he failed to remedy the conditions that led to the children's placement, and continuation, in foster care. While the children were in foster care, father was found guilty of DWI. Father graduated from a substance abuse treatment program and attended counseling, but admittedly continued to drink alcohol and use marijuana until two to three weeks before the circuit court hearing. The circuit court questioned whether father was committed to his sobriety or merely putting on his "best face" for court. The circuit court reminded father that children needed love and stability, but father was "ignoring [his] children's needs" when he was "drinking and smoking dope."

The circuit court did not err by refusing to give father additional time to demonstrate his progress. During the hearing, the circuit court asked father how long the children had to wait for him to "get [his] act together," and he admitted that they "shouldn't have waited this long." "The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." *Joyce*, 75 Va. App. at 704 (quoting *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003)). Moreover, "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" *Farrell*, 59 Va. App. at 425 (quoting *Winfield v. Urquhart*, 25 Va. App. 688, 695-96 (1997)); *see also Geouge v. Traylor*, 68 Va. App. 343, 375 (2017).

At the time of the termination hearing, the children had been in foster care for approximately 19 months, and despite all the services, father was not in a position to resume caring for the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162

(2004) (internal quotation omitted)).  Based on this record, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment."  *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 without addressing sufficiency of evidence supporting termination under another subsection).  Accordingly, having found that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2), this Court need not reach the question of whether the circuit court erred by terminating father's parental rights under Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*