# COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Callins and Frucci
Argued by videoconference*


AYLA SALKAY

MEMORANDUM OPINION** BY
v.      Record No. 0880-23-2           JUDGE STEVEN C. FRUCCI
JULY 22, 2025

CITY OF CHARLOTTESVILLE
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Claude V. Worrell, II, Judge

Christopher C. Graham (Eustis & Graham, PC, on brief), for
appellant.

Samantha Freed; Anthony D. Martin, Guardian ad litem for the
minor child (Katrina Callsen, City of Charlottesville City Attorney's
Office; Lepold & Martin, PLLC, on brief), for appellee.


The Circuit Court for the City of Charlottesville terminated the parental rights of Ayla

Salkay ("mother") to her biological child, A.S.,[1] under Code § 16.1-283(C)(2).[2]  Mother appeals the

order terminating her parental rights and granting the petition of the City of Charlottesville

---

* The panel unanimously agrees that further oral arguments were not required.

** This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] We use initials, rather than names, to protect the privacy of the minor.

[2] Code § 16.1-283(C)(2) provides that parental rights may be terminated when

> [t]he parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

Department of Social Services ("Department").[3]  For the following reasons, we affirm the circuit court.

BACKGROUND[4]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 303 (2013).

I.  Events Leading to Removal

A.S. is the four-year-old biological child of mother and Zachary Williams.[5]  On July 6, 2021, the Department received a report that A.S. was being neglected by her parents.  At the time, mother, A.S., and Williams were living at a hotel.  Upon investigating the hotel, the Department discovered: (1) diapers filled with feces around the hotel floor, (2) A.S. crawling with a sharp knife in her hand, and (3) A.S. with a "marijuana wrapper" in her mouth.  Neither mother nor Williams provided A.S. with redirection from the dangerous behavior.

At the family assessment, mother and Williams stated that they had no money and finding food for the three of them had been difficult.  They elaborated that they would steal from grocery stores to obtain food.  Williams reported that mother was regularly under the influence of alcohol,

---

[3] Mother also challenges the circuit court's order changing the foster plan's goal from "return home" to "adoption."  "Our decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 265 n.3 (2005).

[4] The record in this case was sealed.  We unseal only the facts stated in this opinion to resolve the issues presented. *Brown v. Virginia*, 302 Va. 234, 240 n.2 (2023).  The rest of the record remains sealed.

[5] Williams's parental rights were allegedly voluntarily terminated on April 27, 2023, and are not at issue on this appeal.

even though she was not of legal age to consume alcohol[6] and that he "babys[at]" both mother and A.S.

The manager of the hotel contacted the Department about an incident on the day before where mother asked the front desk to take a bag filled with knives and hangers because the items "could not be in their room." Due to these incidents, along with volatile behavior toward hotel staff, mother and Williams were evicted from the hotel on July 7, 2021.

Based on the lack of supervision and housing, possible substance abuse, and domestic violence, A.S. was removed from the custody of her parents and was administratively placed in foster care on August 4, 2021. The Department's foster care plan for A.S. was "Return to Own Home." To achieve this goal, mother was required to provide stable housing, appropriate childcare/supervision, be substance-free, and provide a home environment free of criminal activity.

On June 29, 2022, the Department petitioned the JDR court to terminate the parental rights of mother pursuant to Code §§ 16.1-282.1 and -283. The JDR court granted the petition and, on October 3, 2022, entered an order terminating mother's parental rights pursuant to Code § 16.1-283(C) and giving the Department the authority to place A.S. for adoption. Subsequently, a de novo hearing was conducted in the circuit court on the Department's petition.

II. Evidence at Trial

    A. Unstable Living Situation – Physical housing and dependence on unsafe individuals

At trial, the Department expressed concern over mother's close relationship with her father (A.S.'s grandfather). A.S.'s grandfather is a registered sex offender and "has a significant history with the [D]epartment in terms of . . . sexual abuse related to a minor." Although the Department informed mother that "nobody else was approved to be at visits," mother's father would attend visits anyway. Further, mother is reliant on her father for support. Mother negotiated with her landlord to

---

[6] Mother is now over the age of 21.

have her father perform repairs on the apartment to reduce the monthly cost of rent. Although mother testified that her father is not on the lease and does not stay overnight, she is not sure exactly where he resides when he stays in Virginia.[7] However, mother admitted to the Department that, "[my father] doesn't sleep [at my apartment] except maybe once or twice and I'm allowed to have guests." Further, on one occasion, a social worker knocked on the door and he answered. On another occasion, while mother was residing at her current apartment, mother called the Department asking for a hotel. The Department informed her that since she already has an apartment, the Department "cannot fund a hotel." Mother then decided to spend the night at the mall and "essentially be homeless for a few nights until her father got back from Florida."

The Department also introduced evidence of mother's husband's pending legal issues, including findings of felony child endangerment, arising from an instance where he was driving and eluding police with a child in the vehicle. When confronted about her husband (then boyfriend) being an inappropriate person to be around A.S., mother threw her breathalyzer on the floor and told A.S. "I'll see you when you're 18."

The Department presented evidence of mother's inability to financially provide for A.S. At the time of trial, mother had been unemployed for roughly nine months. In June of 2022, she was fired from Burger King after three months for missing too many shifts. Mother is dependent on her husband's income to pay for the apartment. In addition, mother would not provide the lease for her apartment despite the Department's eight requests over the four-month period leading up to trial. The Department has been unable to view the apartment for a home visit or assessment despite five requests to do so. When asked if the apartment was safe, mother responded, "I wouldn't say it's safe for [A.S.] to return now."

_____

[7] Mother's father's permanent address is in Florida.

- 4 -

B. Substance Abuse

Mother called Stephanie McNerney as her witness, who was mother's foster parent when she was a child. McNerney testified that she had concerns with mother's marijuana and alcohol use. McNerney also had concerns with mother's parenting and home environment related to A.S. being around adults that were potentially unsafe, which ultimately led her to contacting the Department.

Mother has not stopped using marijuana and has insisted that she will not stop because it is "within her rights, as someone who is a legal adult, to make her own decisions." The Department introduced evidence exhibiting mother's inconsistent compliance with drug screening that included positive screens for THC, morphine, and codeine. Mother also failed to comply with alcohol monitoring. When asked why she failed to comply with alcohol monitoring, mother answered that she felt as if she had "proven her sobriety." However, when pressed further on her noncompliance, she stated that the ankle monitor "wears [her] skin out," the sweat patch "breaks out," and the breathalyzer "doesn't give you enough time to get to the Breathalyzer to do the test." She also stated that the hair follicle test is against her religion.

At the conclusion of trial, the circuit court granted the petition and entered an order on May 1, 2023, that terminated mother's parental rights pursuant to Code § 16.1-283(C)(2) and approved the foster care goal of adoption. Mother appeals.

ANALYSIS

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v.*

*Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which [s]he has been offered rehabilitation services." *Toms*, 46 Va. App. at 271 (quoting *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 562-63 (2003)).

Mother argues that she made substantial progress toward fulfilling the requirements of the foster care permanency plans, and thus, had substantially remedied the conditions that led to A.S. being placed in foster care.

We are unpersuaded by mother's argument. The record supports the circuit court's finding that mother failed to show any meaningful stability when it came to parenting A.S., and not just

financially. Mother was unemployed and completely financially dependent on her father, who is a registered sex offender, and her husband, who has pending charges related to felony child endangerment. It also appears that mother was devoid of any concern for A.S. being around those individuals on a regular basis. Also, mother provided no evidence of stable housing, failing to produce a copy of her lease or allowing the Department to view the apartment despite repeated requests for both. And, contrary to her argument that she "had a place to live suitable for the child," her own testimony at trial belied this assertion, to wit: "I wouldn't say it's safe for [A.S.] to return now." Finally, mother failed to complete substance abuse treatment and screenings, insisting that she "has proven her sobriety" when asked about her failure to comply with alcohol monitoring and that using marijuana "was within her rights, as someone who is a legal adult."

Unstable housing, substance abuse, lack of childcare/supervision, and an unsafe home environment were conditions that led to A.S. being placed in foster care. Mother failed to produce any evidence that she substantially remedied any of those conditions.

A child languishing in foster care is left with the prospect that he or she has but one shot at a positive and productive childhood, and "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004)). Based on this record, the circuit court's termination of mother's parental rights is not "plainly wrong or without evidence to support it." *Id.* at 470 (quoting *Ridgeway*, 59 Va. App. at 190).

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*