COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Raphael
Argued via videoconference


JEFFERY DYLON HARDIN

v.     Record No. 1587-23-2

HOPEWELL DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
JUDGE MARY BENNETT MALVEAUX
JULY 9, 2024

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
Carson E. Saunders, Jr., Judge

Del M. Mauhrine Brown for appellant.[1]

Anne L. Roddy (Sherry L. Gill; Cecilie Hamilton, Guardian ad litem
for the minor child; Barnes & Diehl, P.C.; Sherry L. Gill, Esq.,
PLLC, on brief), for appellee.


Jeffery Dylon Hardin ("father") appeals the circuit court's final order terminating his

residual parental rights under Code § 16.1-283(B) and (C)(2). Father, who was incarcerated

throughout the lower court proceedings, argues that the circuit court erred in finding there was

sufficient evidence to terminate his parental rights because (1) the child could have been placed with

his grandmother until his release from incarceration, and (2) his incarceration did not cause the

conditions that led to the child's being placed in foster care. We find no error and affirm the circuit

court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Appellant's guardian ad litem, Jessica Davies, Esq., participated briefly in oral
argument before this Court.

## I. BACKGROUND[2]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Hopewell Department of Social Services (the "Department") was the prevailing party, so we recite the evidence, and the inferences flowing from it, in the light most favorable to the Department.

A.H. was born substance-exposed on December 11, 2022, to Ashley Noel Reed ("mother"), who, upon admittance to the hospital the day before, had tested positive for fentanyl, cocaine, opioids, and amphetamines. A.H.'s own drug screen showed exposure to amphetamines, benzodiazepines, opiates, fentanyl, and THC. A.H. was admitted to the neonatal intensive care unit, where she "endured respiratory distress, required a ventilator to sustain life, and suffered through other significant withdrawal symptoms as a result of the exposure to illegal drugs." Father was incarcerated at Riverside Regional Jail at the time of A.H.'s birth.

After learning about A.H.'s condition, the Department instituted a safety plan and attempted to place A.H. with a relative. The Department considered three placement options but ultimately rejected all three due to issues such as the individual's criminal history or significant history with Child Protective Services. The Department then filed a petition for abuse and neglect and for emergency removal with the juvenile and domestic relations district court (the "JDR court"). On December 22, 2022, the JDR court entered an emergency removal order on

---

[2] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

the bases that A.H. had been born exposed to illegal substances, mother had admitted using illegal substances while pregnant, father was incarcerated, mother's parental rights to A.H.'s sibling had been terminated, and the Department had been unable to identify a placement for A.H.

A Department agent visited[3] father in jail to share updates about A.H.'s welfare, encourage father to take advantage of services available at the jail that could address his behavioral issues and improve his parenting skills, and seek names and contact information for relatives that could serve as permanent caretakers for A.H. Father provided contact information for his grandmother, Laura Hardin, to be considered as a relative placement option. The Department contacted Hardin, who filed a petition for custody of A.H.

The JDR court conducted an adjudicatory hearing on the Department's petition, at which it concluded that A.H. had been born substance-exposed, mother had admitted to using illegal substances while pregnant, and that father was incarcerated. The court thus concluded that A.H. had been abused and/or neglected under Code § 16.1-228(1), (3), and (5) and continued the matter for a dispositional hearing.

The JDR court heard Hardin's custody petition at the dispositional hearing. Having completed a home study of Hardin, the Department did not support her custody petition. It cited concerns about Hardin's advanced age and inability to care for A.H. long-term, as Hardin had expressed an intent to care for A.H. only until father was released from incarceration. The JDR court denied Hardin's petition and entered a dispositional order approving the Department's foster care goal of adoption or relative placement, ordering custody of A.H. to remain with the

---

[3] Department agents conducted three face-to-face meetings with father while he was at the jail.

Department, and ordering the Department to pursue the approved goal of adoption or relative placement.[4]

The Department later petitioned for a permanency planning hearing, asking the JDR court to approve a new foster care plan with a permanent goal of adoption. Finding termination of parental rights to be in the best interests of A.H., the JDR court ordered the Department to take necessary action to achieve the goal of adoption or relative placement, including filing petitions to terminate mother's and father's parental rights.

The Department then petitioned the JDR court to terminate father's residual parental rights. After a hearing, the JDR court concluded that termination was justified under Code § 16.1-283(B) and (C)(2) and that there were no relatives known to the Department who could serve as caretakers for A.H. The JDR court ordered the termination of father's residual parental rights and directed the Department to make permanent plans for placing A.H. for adoption. Father appealed the JDR court's decision to the Circuit Court for the City of Hopewell (the "circuit court").[5]

At a hearing, the circuit court considered oral testimony from a Department agent, an oral report from A.H.'s guardian ad litem, oral testimony from father, and exhibits proffered by the Department, including the orders entered by the JDR court and the Department's foster care plans. The circuit court concluded that termination of father's residual parental rights was justified under Code § 16.1-283(B) and (C)(2) and that such was in A.H.'s best interests. In support of its decision, the circuit court noted father's

---

[4] The JDR court also concluded that the Department was not required to make reasonable efforts to reunite the child with the parents under Code § 16.1-281(B) because a court had previously found a sibling of A.H. to be abused or neglected and had ordered an involuntary termination of parental rights to the sibling.

[5] Hardin also appealed the JDR's denial of her custody petition. Her appeal was set for the same date as father's, but the court continued her matter to another date.

lengthy criminal history which consisted of distribution of illegal narcotics since 2016, [his] unwillingness to correct his issues and refrain from illegal activity in the past, and [his] blaming others for the manner in which [A.H.] entered into foster care, as if his incarceration was not a result of his own decision-making.

The circuit court also pointed out that father had maintained "regular, if not daily, telephonic contact with [mother] and [Hardin], yet fail[ed] to initiate one call or letter to inquire about the welfare of the child," and "admitted that he never paid support or sent a gift for the child." With respect to Code § 16.1-283(C)(2), the circuit court further noted that father would "not be released from incarceration until February[] 2024 at the earliest, per his own testimony."[6]

Regarding the possibility of placing A.H. with Hardin, the circuit court noted that Hardin was "currently 70 years old and would not be able to care for the child long-term." The circuit court thus concluded there were no known relatives willing and suitable to serve as a permanent placement for A.H. The circuit court ordered that father's residual parental rights be terminated and that the Department be granted the authority to place A.H. for adoption. This appeal followed.

## II. ANALYSIS

On appeal, father challenges the sufficiency of the evidence to support the circuit court's decision to terminate his residual parental rights. Specifically, he argues that (1) A.H. could have been placed with Hardin until his release from incarceration, which would have lessened the time she spent in foster care, and (2) his actions did not cause A.H. to be born substance-exposed and placed into foster care. Father does not contest that the Department made reasonable and

---

[6] At oral argument, counsel for the Department confirmed, and father's counsel did not contest, that no official documentation was presented at the hearing to verify this release date.

appropriate efforts to help him remedy the conditions that led to or required the continuation of A.H.'s placement in foster care.[7]

Upon review of a lower court's decision regarding the termination of parental rights, we presume that it "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "The circuit court has 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" *Eaton v. Wash. Cnty. Dep't of Soc. Servs.*, 66 Va. App. 317, 324 (2016) (quoting *Farley v. Farley*, 9 Va. App. 326, 328 (1990)). "[W]here, as here, the court hears the evidence *ore tenus*, its finding is entitled to the same weight accorded a jury verdict, and it will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 44 (2014) (alteration in original) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)). "[W]e cannot 'substitute our judgment' for the circuit court's, but rather review the record only to determine if sufficient evidence supports it." *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 266-67 (2005) (quoting *Ward v. Commonwealth*, 13 Va. App. 144, 148 (1991)).

Here, the circuit court terminated father's parental rights under Code § 16.1-283(B) and (C)(2). The latter code section authorizes the court to terminate a parent's residual parental rights to a child placed in foster care if such is in the best interests of the child and:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy

---

[7] At oral argument, father attempted to raise this issue despite not having made it in his opening brief or in a reply brief, which he did not file. Accordingly, this argument is waived. *See Jeter v. Commonwealth*, 44 Va. App. 733, 740 (2005) (citing Rule 5A:20(e) in declining to consider an argument developed for the first time in a reply brief and at oral argument).

substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2). "Stated differently, a court must make three separate findings by clear and convincing evidence . . . ." *Joyce*, 75 Va. App. at 701. It must find: (1) that termination is in the child's best interest; (2) that, without good cause, the parent failed to substantially remedy the conditions that led to, or required continuation of, the child's placement in foster care; and (3) that the Department made reasonable and appropriate efforts to help the parent remedy those conditions. *Id.*

"In determining what is in the best interests of the child, a court must evaluate and consider many factors . . . ." *Harrison v. Tazewell County Dep't of Soc. Servs.*, 42 Va. App. 149, 161 (2004) (quoting *Barkey v. Commonwealth*, 2 Va. App. 662, 668 (1986)). These factors include:

> the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

*Id.* (quoting *Barkey*, 2 Va. App. at 668). "'[T]here is no simple, mechanical, "cut and dried" way' to apply the best interests of the child standard. Instead, 'the question must be resolved . . . in light of the facts of each case.'" *Bristol*, 64 Va. App. at 48 (second alteration in original) (first quoting *Peple v. Peple*, 5 Va. App. 414, 422 (1988); and then quoting *Toombs v. Lynchburg Div. of Soc. Servs.*, 223 Va. 225, 230 (1982)). In applying this standard, we have recognized that

> while long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and

> convincing evidence that the best interests of the child will be
> served by termination.

*Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 340 (1992).

The circuit court based its determination on various factors affecting father's relationship with A.H. It found that father had a lengthy criminal history, was unwilling to correct his behavior, and refused to take responsibility for A.H.'s entering foster care even though his incarceration was "a result of his own decision-making." The circuit court also found that father had made little effort to support A.H. or even stay informed about her welfare. And father himself testified that he did not expect to be released from incarceration until February 2024 at the earliest. This date is beyond the statutorily-prescribed 12-month period after A.H. first entered the Department's custody on December 22, 2022. *See Harrison*, 42 Va. App. at 162 ("[I]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990))); *see also L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003) ("The [12]-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement."). Finally, the circuit court found that Hardin, who was 70 years old at the time of the hearing, would not be able to care for A.H. long-term. Indeed, Hardin herself had expressed her intent not to serve as a long-term caretaker for A.H. Based on these facts, the circuit court was not plainly wrong to conclude that

terminating father's residual parental rights was in A.H.'s best interests under Code § 16.1-283(C)(2). [8]

Father also argues that "his actions did not cause the minor child to be substance exposed," and therefore he did "not cause[] the child to be put into foster care." This argument ignores the fact that it was not solely mother's exposure of A.H. to illegal substances, but also father's absence due to his incarceration, that formed the basis of the JDR court's orders for emergency removal and adjudication of abuse or neglect. That father did not directly cause A.H. to be born substance-exposed is no excuse or remedy for his absence from A.H.'s life, which is a result of his own decisions.

## III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[8] We do not address any arguments related to the circuit court's parallel findings under Code § 16.1-283(B), as "[w]hen a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 568 n.9 (2018). This is so because Code § 16.1-283(B) and (C)(2) provide distinct, "individual bases upon which a petitioner may seek to terminate residual parental rights." *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 563 (2003).