COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Lorish and Senior Judge Petty
Argued at Lexington, Virginia

KEELY HOWARD

MEMORANDUM OPINION[*] BY
v.        Record No. 0095-23-3          JUDGE LISA M. LORISH
FEBRUARY 6, 2024

RADFORD CITY DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
Colin R. Gibb, Judge Designate

John S. Koehler (Zachary Smith; The Law Office of James Steele,
PLLC; Buckland Law Firm, PLLC, on brief), for appellant.

(Angi N. Simpkins; Lalita Brim-Poindexter, Guardian ad litem for
the minor child; Barbour & Simpkins, LLP; Poindexter Law, LLC,
on brief), for appellee.  Appellee and Guardian ad litem submitting
on brief.


Keely Howard ("mother") appeals the circuit court's orders terminating her parental rights

under Code § 16.1-283(B) and (C)(2) and approving the foster care goal of adoption.  Mother

argues that the circuit court impermissibly allowed a witness to testify to the contents of a pathology

report, in violation of the best evidence rule.  She also contends that the same witness lacked the

necessary training and expertise to testify to the pathology and sexual transmission of the human

papillomavirus (HPV).  In addition, mother claims that the circuit court erred in concluding that

the child had been subject to neglect and abuse and that it was in the best interests of the child to

terminate the mother's parental rights.  We find no error and affirm the decision of the circuit court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)).

Howard is the biological mother to the child, who was three years old at the time of removal.[2] The Department became involved with the family on August 31, 2020, after mother and the child's maternal grandmother brought her to a medical appointment for a possible yeast infection or urinary tract infection. The medical team diagnosed the child with a sexually transmitted infection, human papillomavirus (HPV), which led to genital warts. The doctor's office contacted the Department to communicate this information. Mother left the doctor's office with the child before the Department arrived and took the child to a hospital, seeking a second opinion.

The Department and the Radford City police went to the hospital and spoke with mother and the grandmother. Mother informed the Department that she had seen "bumps" on the child's skin since the child was six months old but stated that a doctor informed her that the bumps were skin tags. She denied that any other adult had cared for the child, other than the grandmother. She also denied that the grandmother's boyfriend, a registered sex offender, had ever been alone with the child.

---

[1] The record in this case was sealed. "[T]his appeal requires unsealing certain portions to resolve the issues raised by the parties. To the extent that certain facts mentioned in this opinion are found in the sealed portions of the record, we unseal only those portions." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022).

[2] The child's biological father, D'Allen Robbins, was incarcerated in Montana at the time of removal. The City of Radford Juvenile and Domestic Relations District Court terminated father's parental rights and approved the goal of adoption. Father did not appeal.

The Department and the police followed up with mother the next day but could not determine who else lived with her and the child. The Department ultimately confirmed that the grandmother as well as grandmother's son and his father also lived at the residence. The Department and the police interviewed each person who lived in the residence, and all denied having HPV, or knowing who transmitted HPV to the child. The Department advised mother that it did not suspect her "of sexually abusing her child but [that] the Department needed her cooperation to continue to assure [the child's] safety," and mother signed a safety plan for the child, agreeing to comply with the investigation.

Ten days later, the police and the Department tried to interview mother again. She refused to acknowledge that the child had been abused and ended the interview. The Department advised her that refusing to cooperate would violate the safety plan. With mother's consent, the Department placed the child with a relative, who informed the Department two days later that she could no longer care for the child. Mother provided another relative placement option, but, a few days later, that relative informed the Department that she could no longer care for the child due to the child's "level of need."

Because mother was uncooperative with the sexual abuse investigation, and the Department was concerned that it could not determine how the child contracted HPV, the Department petitioned for emergency custody of the child. The City of Radford Juvenile and Domestic Relations District Court (JDR court) granted the Department's petition, and the child entered foster care on October 15, 2020.

Mother was offered many services after the child entered foster care. The Department referred mother for a parental capacity evaluation and sex offender risk assessment, parenting classes, and mental health counseling. The Department also offered her assistance with housing options. Although she participated in some services, she failed to complete the parental capacity

evaluation or the polygraph required by the court ordered sex offender risk assessment. She also refused assistance with independent living.

The Department also offered supervised visitation to mother, but she missed several of these appointments. Mother continued to deny that the child had been sexually abused.

Ultimately, the Department petitioned for the termination of mother's parental rights. The JDR court entered a permanency planning order (an order) approving the goal of adoption and an order terminating mother's parental rights. Mother appealed the JDR court's orders to the circuit court.

The parties convened for a hearing before the circuit court on January 6, 2023. During the hearing, Melissa Buckner, a nurse practitioner, testified that the child had genital lesions, which she diagnosed as genital warts and for which she had prescribed a topical cream as treatment. During a later visit, Buckner biopsied the child's lesions and confirmed the diagnosis of genital warts. The treatment did not work on the child's lesions, and during her last visit with the child, Buckner recommended that the child have surgery to remove the lesions. Buckner testified that there is no cure for HPV.

The Department's counsel asked Buckner about different strains of HPV, at which point mother objected, arguing that Buckner was a nurse practitioner, and not a doctor, and therefore did not qualify as an expert witness. The circuit court instructed the Department's counsel to lay a foundation of Buckner's experience, and Buckner testified to her education and professional experience. The circuit court determined that Buckner was "qualified to say that the [c]hild had HPV" and that she could opine about the cause of the child's HPV. Mother did not object to the circuit court's ruling. Buckner then testified that the child had HPV, type six, which Buckner confirmed as an "anogenital sexually transmitted disease," that is spread with skin-to-skin

contact. Mother also did not object to this testimony. At the close of the Department's evidence, mother moved to strike the Department's evidence, which the circuit court denied.

Mother testified that she still believed that the child had not been sexually abused. She acknowledged that she was aware that the grandmother's boyfriend was a registered sex offender who was around the child often. But mother testified that she was present during these visits. She also testified that she qualified for HUD benefits and had tried to obtain housing, but was unsuccessful due to difficulties in communicating with HUD officials. She testified she was homeless for the six months leading up to the hearing. As of the hearing date, she was living in a hotel, but had previously lived in her car. Mother testified that she was concerned for the child and wanted the child to return to her. At the close of all evidence, the circuit court denied mother's renewed motion to strike.

After considering the evidence and testimony, the circuit court concluded that the termination of mother's parental rights was in the best interests of the child and approved the foster care goal of adoption. The circuit court said that "once the Department started looking into what was going on, there are a lot of other issues here. And I think those issues by themselves, if you just eliminated the issue of the warts, it would give rise to sufficient evidence to terminate parental rights." The circuit court noted that mother had refused to cooperate with the police in the investigation of possible sexual abuse of the child and that she seemed "to attempt to block the investigation." The circuit court stated it did not believe mother sexually abused the child, but found that she was incapable of protecting the child in the future. The circuit court entered orders terminating mother's parental rights for the child under Code § 16.1-283(B) and (C)(2) and approving the foster care goal of adoption. Mother appeals.

ANALYSIS

## I. Rule 5A:18

In her first assignment of error, mother argues that the circuit court erred in allowing Buckner to testify about the contents of the child's pathology report that confirmed the HPV diagnosis. In her second assignment of error, mother challenges the circuit court's decision to accept Buckner as an expert witness, not in general, but specifically as to the pathology and sexual transmission of HPV. Here, mother alleges that the record demonstrated that Buckner lacked the necessary training and clinical experience to express an expert opinion.

We find that mother seeks to raise arguments on appeal that she did not specifically raise in the circuit court in violation of Rule 5A:18. "Ordinarily, '[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 510 (2020) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" *Friedman v. Smith*, 68 Va. App. 529, 544 (2018) (quoting *Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002)).

"Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose . . . ." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both specific and timely — so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

In her first assignment of error, mother argues that the circuit court erred in permitting "Buckner to testify to the contents of a medical record," specifically the results of a biopsy of the child's lesions, "which she did not produce and which [were] not in evidence." Mother contends that Buckner's testimony about the biopsy results was hearsay and "was not relevant to establish why Buckner ordered a particular course of treatment." She also alleges that even if Buckner's "hearsay reference to the result of the biopsy may have been admissible to show why she continued to follow a course of treatment, it was not admissible for the truth of the matter asserted therein," specifically that the child "had been diagnosed with a variant of HPV which could be transmitted by sexual contact and should not have considered by the circuit court for that purpose."

In the circuit court, mother did not object to Buckner's testimony that she had diagnosed the child with genital warts during the first visit, before the biopsy was taken. Only later in the hearing did she raise a general objection to the pathology report itself, arguing that "if [Buckner was] going to base [her] opinion on the report . . . [t]he best evidence [was] the person who did the report." At no point, however, did mother assert that Buckner's testimony was hearsay. Mother also failed to object to the Department's argument that it was not seeking Buckner's testimony about the truth of the facts contained within the pathology report, as she now disputes on appeal. As the Department explained, Buckner's testimony about the biopsy was another reason as to why she treated the child for genital warts. What is more, Buckner did not directly testify that she based her opinion that the child's HPV and genital warts were sexually transmitted solely on the biopsy report, and mother did not otherwise directly challenge Buckner's testimony that the child had HPV, type six, which Buckner testified is a sexually transmitted infection. As mother failed to raise these specific arguments in the circuit court, she may not raise this assignment of error on appeal.

In her second assignment of error on appeal, mother argues that "[t]he Department was required to lay a proper foundation to establish that Buckner had sufficient knowledge, skill, or experience to render an opinion on the diagnosis and etiology of HPV and its transmission through sexual contact in children." She argues that "Buckner offered no evidence that she was trained in recognizing the etiology of variants of HPV" and that "Buckner plainly did not have the requisite education, training, or experience to render an opinion on the etiology of HPV in children." We find that mother also failed to preserve this assignment of error.

During the circuit court hearing, mother objected to the Department's questioning of Buckner regarding the different strains of HPV, generally arguing that Buckner was "just a nurse practitioner," rather than "an expert witness or a doctor." Following mother's objection, the circuit court permitted the Department to lay a foundation on Buckner's experience, and Buckner testified to her education and professional experience with HPV and genital warts.[3] After Buckner's testimony, mother made no additional objection. Mother did not argue, as she does now, that Buckner's education and experience were insufficient to qualify her as an expert witness. Mother never asserted that, following evidence of Buckner's credentials, Buckner was not qualified to offer an opinion on the diagnosis and etiology of HPV or about transmission of the infection through sexual contact in children.[4] As such, mother's general objection in the circuit court that Buckner could not testify as an expert witness because she was "just a nurse

---

[3] The guardian ad litem noted for the circuit court that, contrary to Buckner's argument, Code § 8.01-401.2 permits a nurse practitioner, if properly qualified, to testify as an expert witness. Code § 8.01-401.2(B) states that "[a] physician assistant or an advanced practice registered nurse, when properly qualified, may testify as an expert witness in a court of law as to etiology, diagnosis, prognosis, treatment, treatment plan, and disability. . . ."

[4] Later, during a motion to strike the evidence, mother's counsel argued that "[t]here were some inferences drawn by a Nurse Practitioner, which the Court certified as an expert, which I objected to as being one." This later argument was no more specific than the earlier objection and would have been too late for the court to consider and rule on in any event.

practitioner" was insufficient to preserve her specific challenge to the circuit court's decision to qualify Buckner as an expert witness.

As mother failed to raise in the circuit court the specific arguments contained in her first two assignments of error, she is now barred from raising them on appeal. *See* Rule 5A:18. Mother has "not asked that we apply the 'good cause' or 'ends of justice' exceptions to Rule 5A:18, and we decline to do so *sua sponte*." *Wardell Orthopaedics, P.C. v. Colonna's Shipyard, Inc.*, 72 Va. App. 296, 303 (2020) (citation omitted). Therefore, we will not consider mother's first two assignments of error on appeal.

## II. Termination of Parental Rights

Mother next challenges the circuit court's order terminating her parental rights under Code § 16.1-283(B), assigning the following error:

> The lack of admissible expert testimony and the Department's failure to have the pathology report admitted into evidence precluded the circuit [from] finding beyond a reasonable doubt that the child was subject to neglect or abuse and that termination of Howard's residual parental [rights] was therefore in the best interests of the child.

As phrased, this assignment of error builds on, and in fact depends on, the prior two assignments of error. Because we concluded that mother's challenges to the admission of the expert testimony and pathology report were waived, this assignment of error likewise fails.

Even if we read the error more broadly to assert simply that the record does not contain evidence that the child was subject to "neglect or abuse and that termination of Howard's residual parental [rights]" was in the best interests of the child, we reach the same result.

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce*, 75 Va. App. at 699 (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)).

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). Each of these subsections provides an independent ground for terminating parental rights, though they each require that the child is in foster care, that the reasons for termination be proved by clear and convincing evidence, and that the decision to terminate be in the best interests of the child. *See City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 563 (2003). In addition, Code § 16.1-283(C)(2) states that a parent's parental rights may be terminated if:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In making this determination, Code § 16.1-283(C)(2) states that the court "shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care."

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). This Court has held that "the 'reasonable and appropriate' efforts of the Department can only be judged with reference to the circumstances of a particular case and that 'a court must determine what constitutes reasonable and appropriate efforts given the facts before the court.'" *Joyce*, 75 Va. App.

- 10 -

at 701 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004)). Although Code § 16.1-283(C)(2) contains a "twelve-month time limit . . . designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement," *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003), a court may "consider evidence before or after the twelve-month time period in order 'to evaluate the *present* best interests of the child,'" *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 171 (2014) (quoting *L.G.*, 41 Va. App. at 57).

Because the circuit court relied on Code § 16.1-283(C)(2) as a wholly independent basis for terminating mother's parental rights, and mother does not assign error to this determination, we do not need to reach the question of whether mother's parental rights should also have been terminated under Code § 16.1-283(B). "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005). "It is well-settled that a party who challenges the ruling of a lower court must on appeal assign error to each articulated basis for that ruling." *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 421 (2012). Accordingly, "'[w]e cannot review the ruling of a lower court for error when the appellant does not bring within the record on appeal the [evidentiary] basis for that ruling,' *Prince Seating Corp. v. Rabideau*, 275 Va. 468, 470 (2008), [and] we cannot review it when the appellant does not assign error to every *legal* basis given for it." *Id.* at 422 (alterations in original).[5]

---

[5] We observe that the record provides sufficient evidence to support the circuit court's termination of mother's parental rights under Code § 16.1-283(C)(2). There is no evidence that mother substantially corrected or eliminated the circumstances to allow the child to return to her.

CONCLUSION

For these reasons, the circuit court's ruling is affirmed.

*Affirmed.*

---

The child was diagnosed with HPV, a sexually transmitted infection.  Mother, from the beginning of the investigation through the trial, refused to acknowledge that the child had been abused.  She was uncooperative with the sexual abuse investigation, impeding the Department's ability to determine how the child contacted HPV.  She acknowledged that an individual who was a registered sex offender had been permitted in the home with and around the child.  Mother also failed to complete the parental capacity evaluation or the polygraph required by the court ordered sex offender risk assessment.  Finally, mother refused assistance with independent living and had been homeless for six months by the time of the hearing.