COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Causey and Lorish
Argued by videoconference


AMANDA L. FINCH

v.      Record No. 1512-22-2

GREENE COUNTY DEPARTMENT OF
  SOCIAL SERVICES                                    MEMORANDUM OPINION[*] BY
                                                  JUDGE JUNIUS P. FULTON, III
AMANDA L. FINCH                                      NOVEMBER 26, 2024

v.      Record Nos. 1778-22-2

GREENE COUNTY DEPARTMENT OF
  SOCIAL SERVICES


FROM THE CIRCUIT COURT OF GREENE COUNTY
Claude V. Worrell, II, Judge

Amanda L. Finch, *pro se*.

Kara L. Larson (Annie Lee Jacobs, Guardian ad litem for the minor
children, on brief), for appellee.


Amanda L. Finch ("mother") appeals the circuit court's orders terminating her parental

rights to her three children under Code § 16.1-283(C)(2) and approving the foster care goal of

adoption. Mother challenges the Greene County Department of Social Services' ("the

Department") procedures, as well as the actions of the foster parent, a foster care worker, and the

guardian ad litem. Mother also asserts that the circuit court erred in failing to allow the children

to testify and in admitting the Department's evidence and witness testimony. Finally, she

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

challenges the circuit court's termination of her parental rights and argues that the circuit court violated her constitutional rights. For the following reasons, we affirm.

BACKGROUND[1]

In 2020, the Department received three separate complaints of abuse and neglect of mother's children, K.W., M.W., and J.F., then ages 11, 7, and 2, respectively.[2] The complaints alleged that mother suffered from chronic homelessness and suspected alcohol addiction. Mother also had been diagnosed with bipolar disorder and borderline personality disorder, and "engage[d] in irrational behavior based on her mental health conditions." The Department received additional reports that mother mentally and physically abused K.F., inadequately supervised the children, and drove them while intoxicated.

The family had a long history with social services, with 28 referrals from mandatory reporters to different departments of social services of various counties. Mother often moved "from county to county when Social Services [became] involved" with the family, and she had "a history of being non-cooperative with Social Services." Based on mother's "constant moves, irrational behavior related to her mental health, concerns for [K.F.'s] suicidal and self[-]harm ideations not being adequately addressed," the children entered foster care following an emergency removal order based on abuse and neglect.

Around the same time, a child in need of services ("CHINS") petition was filed in Fluvanna County for K.W., M.W., and J.F. Fluvanna County transferred the CHINS petition to

---

[1] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Virginia*, 302 Va. 234, 240 n.2 (2023).

[2] Mother's oldest child, K.F., was also named in the abuse and neglect complaints. K.F., however, was no longer a minor at the time of the circuit court hearing in this matter.

Greene County Juvenile and Domestic Relations District Court ("JDR court"); the JDR court later dismissed the abuse and neglect petition, and the children entered foster care under the CHINS petition.

The Department prepared a foster care services plan, with the foster care goal of return home and a concurrent goal of relative placement. The Department referred mother to a parenting education program and for psychological and parent capacity evaluations. The Department arranged and required mother to engage in mental health counseling and supervised visitations with the children. And it required mother to secure and maintain a clean home environment, maintain stable income, and participate in family partnership meetings. Mother was prohibited from using alcohol or any illegal substance in the children's presence.

After the children entered foster care, mother started employment at a local fast-food restaurant. Mother also completed educational courses, and became a "certified Master Life Coach, Master Mindset Life Coach, Human Rights Consultant, certified in child psychology as well as mental well-being for children and earned her . . . diploma in Criminal Psychology." Mother founded a consulting and life coaching business called "Your Life Matters."

Mother attended supervised visitation with the children. But during these visits, the Department noted that mother lacked empathy with her children, engaged in disagreements with service providers in the children's presence, failed to provide adequate supervision to the youngest child, spent more time with one child over the others, spent time on her cell phone, and informed the children of the foster care case. Mother manipulated and interrogated the children; she told them that she was the only person whom they could trust and that everyone else in their lives was lying.

Mother completed a psychological and parental capacity evaluation and began individual outpatient counseling. Mother was discharged from counseling after her counselor left the

- 3 -

practice, and mother declined to meet with a new counselor.  Mother later participated in parenting coaching "intermittently."  Although the Department attempted to help mother locate appropriate housing for herself and her children, mother refused the Department's assistance.

In July 2021, the Department changed the foster care goal from return home to relative placement, with a concurrent goal of adoption.  After the change, mother made "no progress." She continued to experience homelessness; although she informed the Department in November 2021 that she was staying with a friend, she did not provide the address or housing composition. The Department provided mother with housing listings, a service to receive a voucher for housing, and offered to pay mother's first month's rent and security deposit.  Mother declined the Department's assistance because she did not want a "handout," and she remained without a stable home.  Mother also informed that Department that she was no longer employed.

Mother completed another psychiatric evaluation in April 2021; although she informed the Department she was "cleared," she did not provide the Department any documentation to confirm this claim.  Mother's psychological and parental capacity evaluations concluded that mother had "perseverative, obsessive tendencies."[3]  In fact, the medical professional who conducted the evaluations had to block mother's number and email following the evaluation "because of the harassing communications."

Mother continued both Zoom and in-person visitation with the children.  But she told the children that they were "pawns" being used by the people around them.  During Zoom calls, mother spent "a lot of time off camera, engaging in conversations with other individuals . . . , discussing alcohol usage, babysitting children, using profanity and blowing smoke off screen."

---

[3] At trial, Dr. Megan Corely, a licensed clinical psychologist, testified that "when someone is incredibly obsessive and perseverative, meaning they will continue to do the same action regardless of consequences, regardless of roadblocks, that is extremely harmful to any kind of change."

Mother's parenting coach attempted "structured family visitation" that combined supervised visitation and parent coaching; she later shifted to supervised visits without parent coaching because mother refused coaching guidance. When mother had difficulty meeting the children's needs during the supervised visitations, the parenting coach offered to arrange individual time for mother with each child, but mother declined. The parenting coach also offered assistance with mental health counseling, but mother was "not interested in being put on medication." Ultimately, mother was discharged from parenting coaching due to lack of participation.

After finding no relatives able to take the children, the Department petitioned to terminate mother's parental rights and change the foster care goal to adoption. The JDR court terminated mother's parental rights and entered permanency planning orders for each child approving the goal of adoption, with the concurrent goal of relative placement. Mother appealed to the circuit court.

The circuit court conducted a two-day hearing on the matter.[4] The foster mother testified that when the children first came to her care, they were very quiet, scared, and emotional. After some time, the older children started excelling in school and became involved in several extracurricular activities, church, and camps. K.W. was diagnosed with generalized anxiety disorder and had a "fear-based attachment" to mother. Over the course of therapy, K.W.'s confidence and self-esteem improved. M.W. also learned coping skills to help manage her adjustment disorder. J.F., who was "developmentally delayed," received therapy through an Infant and Toddler Connection program, as well as physical therapy that improved her gait.

---

[4] The hearing was conducted over two different days because the circuit court granted mother a continuance at the end of the first day to give her an opportunity to subpoena witnesses. Mother has not provided a transcript, or a statement of facts in lieu of the transcript, for the second day of the hearing.

The foster mother testified that when she took the children to supervised visitations with mother, they were never able to leave in a "timely fashion," because mother pulled the children aside as the visits ended and hugged them "until they start[ed] crying." Mother often argued with the children during the visitations. In contrast, the children's therapist opined that the foster mother was able to meet the children's emotional and mental health needs.

After considering the evidence and arguments, the circuit court terminated mother's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption.[5] Mother filed a motion for reconsideration, alleging that the circuit court had violated her constitutional rights. The circuit court denied her motion. Mother appeals.

In her first six assignments of error, mother raises several challenges to the Department's procedures, as well as the actions of the foster parent, a foster care worker, and the guardian ad litem. Next, mother asserts that the circuit court erred in failing to allow the children to testify and in admitting the Department's evidence and witness testimony. Finally, she challenges the circuit court's termination of her parental rights and the denial of her motion for reconsideration.

Additionally, mother has moved for a default judgment under Rule 3:19, alleging that the Department's appellee brief was late.[6] We deny mother's motion. The Department filed its brief within the time permitted by this Court's orders granting it an extension of time to do so. Further, Rule 3:19 does not apply to appeals.

---

[5] Jason Williams is the biological father of K.W. and M.W. Nathaniel Yount is the biological father of J.F. Both fathers voluntarily entered entrustment agreements, and the circuit court terminated their parental rights. They are not parties to this appeal.

[6] At oral argument before this Court, mother made an oral motion for a continuance. Her motion was denied during oral argument by the judges of this panel.

ANALYSIS

I.  Rule 5A:18

"Ordinarily, '[t]he Court of Appeals will not consider an argument on appeal which was not

presented to the trial court.'"  *Fletcher v. Commonwealth*, 72 Va. App. 493, 510 (2020) (alteration

in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)).  "No ruling of the trial

court . . . will be considered as a basis for reversal unless an objection was stated with reasonable

certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the

ends of justice."  Rule 5A:18.  "The purpose of Rule 5A:18 is 'to ensure that the trial court and

opposing party are given the opportunity to intelligently address, examine, and resolve issues in the

trial court, thus avoiding unnecessary appeals.'"  *Friedman v. Smith*, 68 Va. App. 529, 544 (2018)

(quoting *Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002)).

"Specificity and timeliness undergird the contemporaneous-objection rule[] [and] animate

its highly practical purpose."  *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).  "Not just any

objection will do.  It must be both *specific* and *timely*—so that the trial judge would know the

particular point being made in time to do something about it."  *Id.* (quoting *Dickerson v.

Commonwealth*, 58 Va. App. 351, 356 (2011)).

In her first five assignments of error, mother alleges that the Department failed to follow

proper abuse report procedures, serve her with a notice of removal, held the children against their

will, and that the foster mother and a foster care worker failed to encourage the parent-child

relationship, which the circuit court failed to consider.  But she made no such arguments to the

circuit court, so she may not raise them for the first time on appeal.[7]  Rule 5A:18.  Mother has "not

asked that we apply the 'good cause' or 'ends of justice' exceptions to Rule 5A:18, and we decline

---

[7] There is no evidence in the record before this Court that arguments were made or ruled on in part because the record only contains transcripts from the first day of the hearing before the trial court.

to do so *sua sponte*." *Wardell Orthopaedics, P.C. v. Colonna's Shipyard, Inc.*, 72 Va. App. 296, 303 (2020). Therefore, these assignments are waived, and we do not consider them.

## II. The Guardian ad litem

"An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient." Rule 5A:20(c)(2). We will not consider an insufficient assignment of error. *Cf. Env't Staffing Acquisition Corp. v. B&R Constr. Mgmt.*, 283 Va. 787, 792 (2012) (applying Rule 5:17(c)(1)(iii)). Mother asserts that the guardian ad litem failed to perform her duties and never attended any of the supervised visitations between her and the children. Her assignment of error does not identify nor challenge any ruling of the circuit court or even claim that the circuit court failed to rule. Thus, we do not consider this assignment of error because it clearly is insufficient under our rules.

## III. Children's Testimony

When a child is under the age of 14, determining "whether or not the child has reached an 'age of discretion' [to testify] is committed to the sound discretion of the trial court." *Hawks v. Dinwiddie Dep't of Soc. Servs.*, 25 Va. App. 247, 253 (1997). "However, if the evidence proves that a child is 'sufficiently mature to have intelligent views and wishes on the subject' of the termination proceeding, then the trial court should conclude that a child who is younger than fourteen has reached the 'age of discretion.'" *Id.* (quoting *Deahl v. Winchester Dep't of Soc. Servs.*, 224 Va. 664, 675 (1983)). We review the circuit court's ruling for an abuse of discretion. *Id.*

Mother wanted K.W., age 13, and M.W., age 9, to testify at the hearing. The circuit court denied mother's request, based in part on an objection by the guardian ad litem, but ruled that the guardian ad litem could "review with her wards, whether or not they wish to address the Court in any way, shape, or form." Mother asserts that K.W. and M.W. are "intelligent, well spoken, and capable children" and that they were not permitted to testify because their testimony "would not

have benefited the [D]epartment's position" and "the [D]epartment's lies would have been exposed." The record establishes that the children suffered from anxiety and depression—including K.W.'s "fear-based attachment" to mother. In addition, the Department presented testimony that mother had told the children that other adults did not have their best interests at heart. Based on the evidence in the record, we find that the circuit court did not err by not allowing mother to call them as witnesses.

IV.  Department's Evidence

"Appellate courts generally review a trial court's ruling on the 'grant or denial of discovery requests under an abuse of discretion standard.'" *Patel v. Rabinowitz ex rel. Lakhani Assocs., LLC*, 75 Va. App. 663, 669-70 (2022) (quoting *Temple v. Mary Wash. Hosp., Inc.*, 288 Va. 134, 139 (2014)). Mother argues that the circuit court erred in allowing the Department to present testimony and exhibits because the Department never provided her with a witness or exhibit list at least 15 days before trial.

In the circuit court, mother filed a "Motion for Discovery of Accused" that cited Rule 3A:11(b) and demanded inspection of all "the Commonwealth['s]" trial evidence. During the hearing, mother objected to the Department presenting evidence, arguing that it had failed to comply with her motion. In overruling mother's objection, the circuit court explained to mother that Rule 3A:11 only applied in criminal matters and that she had failed to properly request discovery in the case.

On appeal, mother argues that the Department violated Rule 1:18 by failing to provide the witness and exhibit list. Assuming without deciding that mother's discovery arguments in the circuit court preserved this issue, we find it meritless. In civil matters, the circuit court "may" enter a pretrial scheduling order that directs the parties to exchange exhibit and witness lists in advance of the trial. Rule 1:18(b). But in this case, the circuit court did not enter a pretrial scheduling order or

otherwise direct the Department to provide an exhibit and witness list before trial. Therefore, we find no abuse of the circuit court's discretion in allowing the Department to present evidence.

## V. Termination and Adoption

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). The statute "requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which [s]he has been offered rehabilitation services." *Toms*, 46 Va. App. at 271.

- 10 -

Mother argues that she was "met with opposition" from the Department and "[n]othing [she] ever did was good enough." She claims that the Department "did not encourage the parent/child relationship." The record does not support mother's contentions.[8]

After the children entered foster care, the Department provided mother many services, including counseling, supervised visitation, and a parenting coach. Although mother initially engaged those services, she ultimately was discharged for lack of participation. Mother behaved inappropriately during visitations with the children and manipulated their emotions. The Department required mother to secure and maintain a clean home environment and maintain stable income. Despite the Department's extensive efforts to help mother obtain stable housing, mother remained homeless with only sporadic employment.

Mother also argues that the children had a "secure attachment to [her]" and that their behavior declined after they entered care. But the record contains evidence that the children thrived in foster care. They benefited from a wide variety of therapy and counseling, engaged in many extracurricular activities, and the older children excelled in school. The children had been in foster care for over 22 months by the time of the circuit court's hearing. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming h[er] responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004)). Based on this record, the circuit court's termination of mother's parental rights is not "plainly wrong or without evidence to support it." *Id.* at 470 (quoting *Ridgeway*, 59 Va. App. at 190).

---

[8] We note, again, that this Court can only consider what occurred on the first day of trial because the record does not contain a transcript for the second day.

## VI.  Motion to Reconsider

This Court reviews a circuit court's ruling on a motion to reconsider for abuse of discretion.  *Primov v. Serco, Inc.*, 296 Va. 59, 70 (2018).  Mother argues that the circuit court erred in denying her motion for reconsideration; she contends that the circuit court had violated her constitutional rights because she had not been "involved in any decision making processes" regarding the children.

"The parent-child relationship 'is a constitutionally protected liberty interest under the Due Process Clause of the Fourteenth Amendment.'"  *Lively v. Smith*, 72 Va. App. 429, 441 (2020) (quoting *L.F. v. Breit*, 285 Va. 163, 182 (2013)).  "Indeed, the Supreme Court of the United States has characterized a parent's right to raise his or her child as 'perhaps the oldest of the fundamental liberty interests recognized by [the] Court.'"  *Id.* (alteration in original) (quoting *L.F.*, 285 Va. at 182).  Despite these important interests, "an individual's constitutional rights are not absolute; they must be balanced against competing legitimate interests of the state to protect the welfare of its citizens."  *Wright v. Alexandria Div. of Soc. Servs.*, 16 Va. App. 821, 829 (1993).

Here, as detailed above, the Department offered numerous services to mother to support the initial goal of reunification, but mother refused to cooperate.  Specifically, mother failed to work with the parenting coach, refused to make use of the mental health services offered to her, and declined to use the housing assistance resources available to her.  Those failures created a risk of harm to the children.  In terminating mother's parental rights, the circuit court properly applied Virginia's statutes that protect children.  We also note that the circuit court granted mother a continuance of the hearing over the Department's objection to permit her additional time to subpoena her requested witnesses.  Thus, the circuit court did not violate mother's constitutional rights and did not abuse its discretion in denying mother's motion for reconsideration.

- 12 -

## CONCLUSION

For all these reasons, the circuit court's judgment is affirmed.

*Affirmed.*