COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, Fulton and White


DARAN ALI BRITT

                                                MEMORANDUM OPINION* BY
v.        Record No. 0508-24-3            JUDGE KIMBERLEY SLAYTON WHITE
                                                      JANUARY 28, 2025

ROANOKE CITY DEPARTMENT
  OF SOCIAL SERVICES


                 FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                                David B. Carson, Judge

         (David A. Bowers, on brief), for appellant.  Appellant submitting on
         brief.

         (Timothy R. Spencer, City Attorney; Jennifer L. Crook, Assistant
         City Attorney; Shenna S. Massey, Guardian ad litem for the minor
         child, on brief), for appellee.  Appellee and Guardian ad litem
         submitting on brief.


         Daran Ali Britt is the father of A.B.,[1] a five-year-old child with special developmental

needs.  Following a drive-by shooting involving Britt, and in light of Britt's toxic, violent

relationship with A.B.'s mother and his inability to provide for A.B.'s necessary care, A.B. was

removed from Britt's custody.  She was placed into temporary foster care with the ultimate goal

of being reunited with Britt.  However, Britt failed to do what was required of him to regain

custody, such as individual counselling, weekly family visits, providing documentation of a

stable income, and completing domestic violence prevention training.

         At a hearing held 19 months after A.B. was placed in foster care, the circuit court

terminated Britt's parental rights and placed A.B. on track for adoption.  The court cited Britt's

_____

         * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

         [1] We refer to the child by her initials to afford her privacy.

failure to comply with the requirements set forth for reunification and noted that A.B. is thriving in her foster home. Finding that its decision is supported by the evidence, we affirm.

BACKGROUND[2]

Daran Ali Britt ("father") and Maria Gogarty ("mother")[3] are the biological parents of five-year-old A.B., the subject of this appeal. In 2021, when A.B. was two years old, mother and father litigated her custody in the Roanoke City Juvenile and Domestic Relations District Court ("JDR court"). In February 2022, the JDR court ordered the Roanoke City Department of Social Services ("DSS") to provide ongoing services to the family because of "father's history of violence" and "incidents between the parent[s]" in which A.B. was "caught in the middle." In one such incident, mother called the police after father "hit her in the back of the head with a pistol." Mother told the responding officer that domestic altercations between her and father were a "monthly" occurrence. DSS referred both parents for individual counseling services to address their relationship issues and the domestic violence concerns, but father failed to participate in counseling.

In June 2022, law enforcement officers responded to a reported shooting involving father at which A.B. was present. Father and A.B. were passengers in a van; while waiting in traffic, father exited the van and began arguing with Jontae McDougal. When father reentered the van, McDougal shot at father, but missed. Following the incident, DSS petitioned the JDR court for preliminary removal. In addition to its concerns for A.B.'s physical safety, DSS believed father's

---

[2] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Virginia*, 302 Va. 234, 240 n.2 (2023).

[3] The circuit court also terminated mother's parental rights; she did not appeal.

history of domestic violence and the "constant arguing and bickering" between both parents placed A.B.'s "emotional well-being" at risk.

Mother and father's poor relationship also affected their ability to co-parent A.B. and care for her needs. A.B. had missed medical appointments because parents "weren't really communicating or coordinating appointments." This "lack of communication" in A.B.'s care led to her "missing appointments and not be[ing] enrolled in things that she . . . should have been able to participate in." Though A.B. had significant developmental delays and was "essentially nonverbal," she was not enrolled in any services. A.B. had been referred for a child study through the public school system, but the process required parental consent to evaluate her eligibility, and father "failed to return the paperwork in the time allotted."

In July 2022, the JDR court adjudicated that A.B. was abused or neglected and entered a preliminary removal order. DSS removed A.B. from her parents that day and placed her in foster care. The JDR court later entered a dispositional order and approved an initial foster care goal of returning the child home.

To regain custody of A.B., DSS required father to maintain a stable income sufficient to provide for A.B.'s needs. Father was also expected to stabilize his mental and emotional health and to learn skills for maintaining healthy communication and relationships. DSS provided father with case management services and required him to enroll in individual counseling, complete a parenting class, submit to a criminal background check, and participate in supervised visits with A.B. To address the domestic violence concerns, father had to complete an assessment for the Domestic Violence Alternative Program (DVAP) and follow all recommendations.

Father informed DSS that he was employed at a motel doing general maintenance and repairs, in addition to working part-time at a fast-food restaurant. Father provided a letter from his employer confirming his employment at the motel but stated that he did not have documentation of

his income because he was paid "under the table." DSS did not receive documentation confirming father's income or employment at the fast-food restaurant.[4] Father also did not submit the paperwork required for his background check until more than six months after he received it from the Department.

On August 30, 2022, DSS provided father with paperwork for the required DVAP assessment. Father did not return the completed paperwork until nearly two months later. Due to this delay, father could not participate in DVAP because the program had stopped offering virtual sessions at that point. Father's case manager then referred him for a local anger management group and a trauma group as "the closest option to meet the domestic violence concerns." Father completed the anger management course.

Father reported in fall 2022 that he was receiving counseling services "in his locality," since he had "moved out of the Roanoke area . . . in July of 2022" due to "safety concerns" he had while living there. But DSS later learned that father was only receiving mental health case management services and not individual counseling. Father advised the DSS that he would start individual counseling in December 2022. In March 2023, the Department asked father for a progress update on his completion of the required services. Father claimed that "he had finished everything and didn't have any further services" to complete, when "in fact, . . . he had never actually started the individual counseling." Father was immediately referred to counseling services a second time. In May, father told DSS yet again that he would start counseling; once again, he provided no verification that he had done so. "It has since been determined that [father] never started individual counseling services."

---

[4] Later, father reported that he was no longer able to work due to injury and that he had started receiving disability benefits, but he provided no supporting documentation.

Father was also referred to a parenting class and provided with registration information; he "never signed up." He was referred a second time but "miss[ed] the start date." Father informed DSS that he planned to enroll in a different parenting class, but he never sent DSS verification confirming his enrollment.

DSS also provided father weekly supervised family time. At father's request, the first few weeks of visitation were held over video "due to his safety concerns in the Roanoke area." In early August, he agreed to in-person family time because "he felt that the individual [in Roanoke by whom he felt that his safety was threatened] had been detained." Nonetheless, he missed the first and second week of in-person family time scheduled in August. From July 2022 to July 2023, father missed 15 weeks of scheduled weekly family time.

DSS petitioned to terminate father's parental rights and to change the foster care goal to adoption. It was concerned with father's lack of progress in completing the services provided to him for over a year. In its view, father's continued "lack of consistency and follow through" demonstrated an inability to care for A.B., a "child with above average needs" who required extensive services and support. In May 2023, the JDR court terminated father's parental rights to A.B. and approved the foster care goal of adoption. Father appealed the JDR court's rulings to the circuit court.

At the circuit court hearing in February 2024, the parties stipulated to the admission of various documents. The trial court received records of child protective services, the file from the JDR court, A.B.'s medical records, and various records concerning A.B.'s mother. The trial court also heard from DSS employees who provided the above cited background information.

At the hearing Dr. Klaire Mundy, a licensed psychologist, testified that she had interviewed mother as part of a psychological evaluation in 2023. Mother told Dr. Mundy that father exhibited "a lot of physical violence" toward her during their "toxic" relationship. Mother described father

hitting and injuring her several times while she was holding A.B.  Dr. Mundy then opined that exposure to domestic violence in the home causes children "to have neurological and emotional responses," harming brain development over time.  According to Dr. Mundy, because children "learn how to communicate and respond to people based on what they see at home," exposure to domestic violence can cause "difficulty with emotional[,] . . . physical[,] . . . and sometimes even societal responses in the home and in the community."

At the time of the hearing, A.B. was 4 years old and had been living in a therapeutic foster home for about 19 months, since July 2022.  After entering foster care, A.B. was diagnosed with autism and Global Developmental Delay.  A.B. received speech therapy and occupational therapy.  She began attending preschool, where she qualified for an Individualized Education Plan and continued to participate in therapy, including outpatient speech therapy.  Even with services in place, A.B. had "significant" needs, was "easily overwhelmed and triggered," and struggled in areas such as impulse control and coping with changes and transitions.  But A.B. "thriv[ed]" in the foster home where she resided continuously since July 2022.  Her vocabulary "expanded tremendously," and she made "a lot of progress across the board with her development in milestones" since entering foster care.  DSS opined that A.B.'s foster mother, experienced and specifically trained in caring for children with autism, could be a "permanent option if adoption is approved."

Father testified that he was living with his teenage son from a previous relationship and his fiancée, Tara Briggs.  Father claimed he had completed DSS's counseling requirement, although he initially "took the wrong class by mistake."  According to father, he completed "[e]verything that they . . . signed me up for."  But father admitted that he "d[idn't] think" he was compliant with the parenting class requirement, explaining that he "chose the wrong class that didn't fit the state's requirement."  Father claimed that after realizing his mistake, he asked DSS to provide him with information on parenting classes that would satisfy the requirement but had never "g[ot] any of that

information." Father denied missing 15 weeks of family time, arguing that "maybe three" scheduled visits had been cancelled because A.B. was sick or had an appointment and that "one time she couldn't get there in time because her caretaker was stuck in . . . traffic."

After considering the evidence and arguments, the circuit court approved the foster care goal of adoption and terminated father's parental rights under Code § 16.1-283(B), (C)(1), and (C)(2). Father appeals.[5]

ANALYSIS

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

---

[5] We deny father's motion for summary reversal of the circuit court's judgment. Although father alleges that DSS "has not timely filed an appellee brief in the case," DSS's brief was timely. Rule 5A:19(b)(2). Moreover, an appellee's failure to file a timely brief is not grounds for a summary reversal. *See* Rule 5A:26 (providing that when an appellee's brief is late, "this Court may disregard any additional assignments of error raised by the appellee" and may bar the appellee from presenting oral argument).

Father argues on appeal that the evidence could not support the termination of his parental rights under Code § 16.1-283(B), (C)(1), and (C)(2). He contends that DSS failed "to adequately provide rehabilitative efforts" and did not inform him of any remaining services or requirements that he needed to complete before regaining custody of A.B. He also asserts that the circuit court erred in terminating his parental rights because DSS failed to prove that termination was in A.B.'s best interest.

Code § 16.1-283(C)(2) provides that a parent's parental rights in a child can be terminated if the court finds by "clear and convincing evidence" that termination is in the child's best interest and that:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In making this determination, the court "shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care." Code § 16.1-283(C)(2).

The circuit court had to make three findings by clear and convincing evidence before it could terminate father's parental rights to A.B. under this statute. *Joyce*, 75 Va. App. at 701 (citing Code § 16.1-283(C)(2)). First, that termination is in A.B.'s best interest; second, that father, without good cause, "failed to substantially remedy the conditions that led to" A.B. being placed into foster care; and third, that DSS made "reasonable and appropriate" efforts to help father to remedy those conditions. *Id.*

The record supports the circuit court's termination of father's parental rights under Code § 16.1-283(C)(2) according to the above requirements.

First, the circuit court did not err in finding that termination was in A.B.'s best interests. "This Court has said that 'there is no simple, mechanical, "cut and dried" way' to apply the best interests of the child standard." *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 48 (2014) (quoting *Peple v. Peple*, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" *Id.* (quoting *Toombs v. Lynchburg Div. of Soc. Servs.*, 223 Va. 225, 230 (1982)).

A.B. thrived in foster care and made extensive progress in her speech and overall development. She is "receiving all the care and support that she needs" and is "thriving . . . at [this] very critical point in her development." She is "well adjusted," "connected" with the services being provided to her, and her foster home has "provide[d] her [with] permanency." Also, Dr. Mundy testified regarding the harmful effects of domestic violence on young children, which, given father's failure to participate in DVAP and the harm that his violent conduct toward mother caused to A.B. too, remains a barrier to reuniting A.B. with father.

A.B. had been in foster care for about 19 months by the time of the circuit court hearing. "[I]t is in the best interests of children to receive a permanent placement without languishing in the foster system." *Simms*, 74 Va. App. at 464. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Thus, the record supports the circuit court's finding that the termination of father's parental rights was in A.B.'s best interests.

Next, father has not remedied the conditions that caused A.B. to be placed in foster care to begin with. "[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to

make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

The JDR court made the initial decision that A.B. be placed in foster care due in part to father's failure to participate in counselling and the "toxic" relationship between father and mother. It directed DSS to offer its services to remedy these conditions. Yet father never completed individual counseling, nor did he comply with the domestic violence prevention measures that DSS required him to complete. He was also expected to maintain a stable income sufficient to support A.B.'s needs, but never provided proof of income or any other financial documentation. Before A.B.'s placement in foster care, he had failed to adequately engage in services necessary to support her developmental needs, such as completing the required paperwork for A.B.'s child study. After A.B.'s removal, father demonstrated an inability to complete the services required by DSS by failing to register for classes and by delaying submitting paperwork until it was too late. Thus, father did not show improvement in his ability to manage necessary services. He did not remedy the conditions that led to A.B.'s initial placement into foster care.

Finally, DSS made reasonable and appropriate efforts to help father rectify the conditions that caused him to lose custody over A.B. We have held that "the 'reasonable and appropriate' efforts of the Department can only be judged with reference to the circumstances of a particular case and that 'a court must determine what constitutes reasonable and appropriate efforts given the facts before the court.'" *Joyce*, 75 Va. App. at 701 (quoting *Harrison*, 42 Va. App. at 163).

DSS provided services to the family for over a year, starting with the custody dispute and continuing after A.B. entered foster care, but father failed to make progress. When A.B. was removed to foster care, DSS was concerned with father's history of domestic violence and his inability to maintain a healthy relationship and communication with mother. Father never

- 10 -

completed the assessment for the domestic violence program to address his history of domestic violence. Father also failed to participate in parenting classes or individual counseling, despite DSS providing him multiple referrals for both. DSS "is not required to force its services upon an unwilling or disinterested parent." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013) (quoting *Harris v. Lynchburg Div. of Soc. Servs.*, 223 Va. 235, 243 (1982)). Accordingly, we affirm.[6]

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[6] Father also disputes the circuit court's findings under Code § 16.1-283(B) and (C)(1). "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and declining to address termination of parental rights under another subsection). Having found that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2), we need not address whether father's parental rights were also subject to termination under Code § 16.1-283(B) or (C)(1).